[S. F. No. 15077. In Bank.—December 27, 1934.]

IDA CLARE FULLER, Appellant, v. BERKELEY SCHOOL DISTRICT OF ALAMEDA COUNTY (a Body Corporate and Politic) et al., Respondents.

Frank M. Carr and W. W. Laidley for Appellant.

Earl Warren, District Attorney, Ralph E. Hoyt, Chief Assistant District Attorney, and Agnes R. Polsdorfer, Deputy District Attorney, for Respondents.

Everett W. Mattoon, County Counsel (Los Angeles), and S. V. O. Prichard, Deputy County Counsel, as *Amici Curiae* on Behalf of Respondents.

THE COURT.—A petition for hearing in this case was granted for the purpose of giving further consideration to the questions presented. After a full consideration of the evidence and the arguments, we conclude that the findings and conclusions of the trial court that the particular kind of service rendered by the plaintiff as a teacher in the Berkeley

School District of Alameda County was discontinued, that the discontinuance thereof was not a subterfuge nor an expedient for the purpose of evading the Teachers' Tenure Act, and that the plaintiff was not entitled to a writ of mandate to compel her reinstatement as a teacher in the district, are sustained by the facts and the law. We therefore adopt the following portions of the opinion of the District Court of Appeal, First Appellate District, Division Two, prepared by Mr. Justice Sturtevant, as the opinion of this court:

''From a judgment refusing to her a writ of mandate the plaintiff has appealed. From 1923 down to the end of the school year, June, 1932, the plaintiff was a teacher in the defendant district. At that time the defendant board, claiming to act under the statute, made certain changes regarding the teachers. By virtue of that change the plaintiff and all others holding the same status were dismissed. The plaintiff contends that the change was wrongful. These conflicting contentions arise out of the following facts: During the entire period of plaintiff's employment by the district there were three classes of teachers teaching in the kindergartens of the Berkeley School District: directors, assistant directors and associate directors. Each kindergarten class was in the independent charge of a kindergarten director who was responsible to the principal of her school and to the superintendent of schools of the city of Berkeley for the conduct of the kindergarten in her charge. The assistant and associate kindergarten directors took orders from the directors and were responsible only to the director under whom they taught. The assistant and associate kindergarten directors were employed to assist the kindergarten directors when the number of children in any one kindergarten exceeded a specified number. If the number of children was over thirty and under fifty-six an assistant kindergarten director was employed to assist the director, and if the number was fifty-six and over an associate kindergarten director was employed to assist the director. Kindergarten directors, assistant kindergarten directors and associate kindergarten directors rendered only a half day's service during the entire period of plaintiff's employment until the second term of the year 1931–1932.

"The rate of compensation of the three classes of kindergarten teachers was different. A kindergarten director received seven-eighths of the amount fixed in salary schedule for a full-time teacher and this amount increased automatically with the length of service in accordance with the salary schedule. The salaries of assistant directors remained at $4 per day and the salaries of associate directors remained at $5 per day regardless of the length of service. The director in each case determined the program and activities for each week and day.

"The director in addition to teaching performed the following duties which the assistant and associate directors were not required or permitted to perform: Kept the school register; made and swore to the correctness of the annual report to the county superintendent of schools; prepared and signed the requisitions for supplies needed to conduct the kindergarten in her charge; gave directions to her assistant and associate directors as to the duties they were to perform; prepared monthly reports required by the Berkeley board of education; received orders from the principal; and determined the weekly and daily programs and activities for the kindergarten in her charge.

"The record of plaintiff shows that she entered the employment of the Berkeley School District in August, 1923, and served during the school year of 1923–1924 as an assistant kindergarten director; that during the first term of the school year 1925–1926 she served as a kindergarten director, substituting for the regular teacher; that during the second term of the school year 1925–1926 she served as an associate kindergarten director; that during the school year 1926–1927 she served as an acting kindergarten director; that during the school years 1927–1928, 1928–1929, 1929–1930 and 1930–1931 she served as an assistant kindergarten director; that during the first term of the school year 1931–1932 she served as an assistant kindergarten director, and that during the second term of the school year 1931–1932 she served as an associate kindergarten director.

"From the time plaintiff became an employee of the Berkeley School District until March, 1925, she held a kindergarten primary certificate qualifying her to teach kindergarten and the first grade. Later she obtained a kindergarten, first, second and third grade certificate, and

at the time of her dismissal at the close of the school year 1931–1932 she held a life certificate qualifying her to teach kindergarten and the first, second and third grades.

"During the school year 1931–1932 the board of education of the Berkeley School District reorganized the administration of the kindergartens of the district, effective July 1, 1932. The kindergarten director, as a result of this change, taught one class in the morning and one in the afternoon, instead of one class only in the morning. On April 25, 1932, the board of education of the city of Berkeley and the Berkeley School District of Alameda County resolved and ordered that on account of the reorganization of the kindergartens during the school year 1931–1932, the kind of service rendered by assistant and associate kindergarten directors be discontinued at the close of the school year 1931–1932, and that all assistant and associate kindergarten directors be dismissed at the close of the school year 1931–1932. Plaintiff was given a written notice of dismissal in accordance with this resolution, which was dated April 29, 1932, and was received by plaintiff on or about May 1, 1932.

"All other assistant and associate kindergarten directors of the Berkeley School District were also dismissed at the close of the school year 1931–1932, and since that time the only kindergarten teachers in the district are kindergarten directors.

"On June 30, 1932, the particular kind of service rendered by assistant and associate kindergarten directors was discontinued.

"It may be conceded that there was some evidence in conflict with some of the foregoing statements. However, it must also be conceded that there was evidence supporting each of said statements and that all of said statements are substantially in the language of the findings of the trial court. Under these circumstances the findings may not be ignored by this court.

"Plaintiff asserts that she was wrongfully dismissed and she cites and relies on *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042], and other cases following the doctrine of that case. However, both parties concede that the exact question before us has never before been decided. The defendants claim they acted within the clear terms of the statute. (School Code, sec. 5.710.) They quote as follows:

'It is hereby provided that whenever it becomes necessary to decrease the number of permanent employees in the school district . . . on account of the *discontinuance of a particular kind of service in such district,* the governing board may dismiss such employee at the close of the school year.' The defendants call attention to the words which we have italicized. They claim that what they did was clearly within the terms of the statute. They specially call our attention to the ordinary meanings of each of the words as defined in Webster's dictionary. We think their argument is sound. Furthermore, other provisions of the statute throw much light on the subject. The maintenance of the kindergarten department is optional in every district. To some extent the teaching of certain subjects is mandatory, the teaching of other subjects is optional. 'Part time teaching or services' is also recognized by the statute. (School Code, sec. 5.880.) 'Discontinuance' of services or teaching is also recognized by the statute. (School Code, secs. 3.140 and 5.710.) The word 'serve' and the word 'service' are used many times in the statute. (Secs. 3.32, 5.710, 5.712, 5.730, 5.731, 5.772, 5.734, 5.744, 5.890, 5.900, 5.773, 5.800, 5.801, 5.810, 5.811, 5.812, 5.814, 5.820, 5.831, 5.832, 5.840, 5.882, 5.892, 5.893, 5.895, 5.902, 5.903, 5.904 and 5.885.) An examination of such passages shows that 'to teach' is 'to serve' and *vice versa,* and that 'services' of the teacher are 'teaching' and 'teaching' is 'services' . . . Under the facts recited above it is plain that plaintiff was a helper only and acting under the direction of certain superiors. At the end of the school year, having complied with the various provisions of the law, the defendants were clearly within their rights in limiting their employees to directors, each teaching a full day, instead of employing associates or assistants who taught only a half day and then under the direction of the director. . . . ''

The plaintiff insists that, assuming the kindergarten service rendered by her was discontinued, she was nevertheless entitled to an assignment to teach in the primary grades in accordance with her certificate. This could be so only in the event she had been improperly dismissed. If section 5.710 of the School Code means anything, it must be taken to mean that when a particular kind of service is discontinued the teacher employed in that service may be dis-

missed and no obligation devolves upon the district to retain her or to reemploy her except in accordance with section 5.712 of the School Code. That section provides that if the discontinued service is reestablished within one year the dismissed employee shall have the preferred right to reappointment. Under these circumstances the offer of counsel for the plaintiff to produce further evidence that probationary teachers have been employed to teach classes to which the plaintiff claims to be entitled to an assignment as a permanent employee would be unavailing.

The judgment is affirmed.

▮▮ The plaintiff further insists that all of the decisions upon which she relies have not been considered in arriving at the conclusion that she was rendering a "particular kind of service". None of the cases thus far touching the question presents facts or conclusions thereon which are helpful or controlling in the case at bar. Of necessity each case must be determined upon its own particular facts. It is urged that inasmuch as the employment involved here was kindergarten teaching and kindergarten teaching is still a service being performed in the school district, the service performed by the plaintiff has not been discontinued. But the particular kind of kindergarten service which the plaintiff was employed to render has been discontinued. That more than one kind of kindergarten service, viz., three kinds or classes of such service, were established in the district prior to the plaintiff's dismissal is fully supported by the record here presented, and no showing is made that the action of the board was not taken in good faith.

LANGDON, J., Dissenting.—I dissent. I think that the foregoing opinion misinterprets the provisions of the statute, and sanctions a device which may in hostile hands destroy the system of teachers' tenure. That system has raised immeasurably the dignity and professional competency of our teachers, and the legislative act which established it requires an interpretation which carries out, and not one which defeats its purpose.

The classification of kindergarten teachers as "directors", "associates", and "assistants" is ingenious but dangerous. Why not directors, associates and assistants of first grade, fifth grade, eighth grade teaching? Why not the same

classifications in the high schools? There is nothing to prevent it, under this opinion. And once a group of teachers is classified in these convenient but useless brackets, what is easier than to cut off the appendages and terminate the employment of the teachers so classified?

There are three permissible grounds for dismissal of permanent employees under the statute: misconduct or unfitness, decrease in the number of pupils attending the schools, and discontinuance of a particular kind of service. (School Code, secs. 5.661, 5.710.) Economies may be effected where the attendance has fallen off, but such was not the case here. It is the last ground, discontinuance of the service, which is relied upon to justify the action taken by the board. The meaning of the statutory language "discontinuance of a particular kind of service", seems reasonably clear. In *Martin* v. *Fisher*, 108 Cal. App. 34, 41 [291 Pac. 276], it was paraphrased as the "discontinuance of a course of instruction in which the teacher is engaged". A teacher who teaches kindergarten is rendering the same service whether called a director, associate or assistant. Aside from immaterial clerical duties assumed by a director, the service performed, the teaching, was exactly the same. How can it sensibly be said that plaintiff, a kindergarten teacher, has been dismissed because of a discontinuance of the service when others remain to teach the same thing in the same way? The sole purpose and effect of the arbitrary classification of so-called services in this case was to do what the law forbids—permit the discharge of a permanent teacher whose subject was still taught.

I am further of the opinion that the majority of the court have failed to give adequate weight to the fact that plaintiff also was qualified by her certificate to teach the first, second and third grade, and that even though the entire kindergarten had been abolished, would still be entitled to a position in accordance with her certificate and her priority of service. The record shows that when plaintiff was dismissed, a probationary teacher was teaching the third grade in the Cragmont School. Why was not plaintiff entitled to that assignment? The opinion does not, and I think that it cannot, satisfactorily answer that question.

Curtis, J., concurred.

A rehearing was denied on January 25, 1935, and the following opinion then rendered thereon:

THE COURT.—On petition for rehearing great apprehension is expressed by the petitioner lest the whole teachers' tenure system be upset if the decision stand. This fear is without foundation under the facts in the case. ██ Under the School Code the board is authorized to classify the service and under section 5.710 the board is authorized to discontinue particular kinds of service provided the same be done in good faith. Under the School Code the maintenance of a kindergarten department is optional. In some districts it may be more expansive than in others. The board necessarily has the discretion to classify the services in that department and it is authorized under section 5.710 to discontinue a particular kind of service in that department, provided the same be done in good faith, which connotes without subterfuge. If there are permanent teachers in the discontinued service they may be dismissed, subject to their right to reemployment in the event the discontinued service be reestablished. ██ The question of the good faith of the board in taking the challenged action was an issue in the trial court, was determined against the petitioner on sufficient evidence and may not here again be litigated for the purpose of reversing the judgment.

██ The petitioner insists that inasmuch as at the time of the discontinuance of the classes of service involved, a probationary teacher was teaching in the third grade of the Cragmont school, the petitioner had the right to be appointed to teach that grade in the place of the probationary teacher. The claim of the petitioner is that, because she had established tenure in the discontinued class of service from which she had been dismissed, and because she also possessed a certificate qualifying her to teach in some other class of service, she had a right under the teachers' tenure system to be appointed to a position to teach in such other class of service for which she was also certificated and which was then held by a probationary teacher. ██ It may be assumed that the general purposes and objects of the teachers' tenure system contemplate that whenever possible teachers who possess permanent tenure at the time of their dismissal under the particular section involved, shall be

preferred in employment in other classes of service to teachers who have not established tenure, and it is not intended by the decision to disturb any custom or policy, adopted in recognition of the purposes and objects of the system, to appoint such dismissed teachers to positions in other classes of service held by probationary teachers. But the only right to reemployment which may be said to become here the subject of compulsory action on the part of the board in an appropriate proceeding is the right expressly conferred by section 5.712 to reappointment should the discontinued service be reestablished. No preference rights are expressly declared by section 5.710, while sections 5.711 and 5.712 do expressly declare a preference in cases of which this is not one. The reason for the failure of the legislature to provide expressly for the preference right claimed by the petitioner may be said to be indicated by the incongruous situation resulting from the fact that nine teachers, including the petitioner, were dismissed when the particular classes of service here involved were discontinued and that those nine teachers might be supposed to have the right to the position held by the third grade probationary teacher.

The petition for rehearing is denied.

Curtis, J., and Langdon, J., voted for a rehearing.