[Civ. No. 42489. Second Dist., Div. Three. May 22, 1974.]

DAWN MORRELL KARBACH et al., Plaintiffs and Respondents, v. BOARD OF EDUCATION OF THE
LAWNDALE SCHOOL DISTRICT et al., Defendants and Appellants.

## COUNSEL

John H. Larson, County Counsel, and Neal Moore, Deputy County Counsel, for Defendants and Appellants.

Levy, Van Bourg & Hackler and Jack Levine for Plaintiffs and Respondents.

## OPINION

**POTTER, J.**—This is an appeal by the Board of Education of the Lawndale School District and its secretary, Kenneth E. Ricketts, from a judgment of the superior court granting a peremptory writ of mandamus commanding the board to set aside its decision in an administrative proceeding and to reconsider its action in the light of the court's findings of fact and conclusions of law. The board, in its administrative decision dated May 12, 1972, adopted a proposed decision of a hearing officer which held that all 43 first and second year probationary teachers employed by the district were subject to termination by not being reemployed for the 1972-1973 school year. Petitioners are 13 of the first and second year probationary teachers who were thus terminated. The conclusions of law referred to in the judgement as governing the board's further conduct of the matter included a conclusion No. 2 to the effect that though the board "is justified in terminating 5.79% of the certificated employees of the Lawndale School District, . . . in no event are Petitioners herein to be considered for termination."

The case was submitted to the trial court on the record of the administrative proceedings.[1] Consequently, the facts are not in dispute.

---

[1] The transcript and exhibits comprising such record have been transferred to this court at its request. (Cal. Rules of Court, rule 12, subd. (a).)

*Facts*

The terminations out of which this litigation arose were initiated by the sending of a notice dated March 14, 1972, to the board of trustees and to each of the 43 affected teachers, stating the recommendation of the board's secretary that said teachers not be reemployed for the ensuing school year. Said notices, given pursuant to the provisions of section 13447 of the Education Code, specified as the "reasons" for such recommendation the following: "The average daily attendance in all the schools of the district for the first six months of this year has declined below the corresponding period of either of the previous two school years."

Such a decline in the average daily attendance is one of two bases justifying termination of certificated employees under the provisions of section 13447. The other such basis is the reduction or discontinuation of "a particular kind of service" at the beginning of the following school year. Termination on either ground requires a determination that in the opinion of the governing board "it shall have become necessary by reason of either of such conditions to decrease the number" of employees. The procedure for reaching such a determination is provided by incorporation of the notice and hearing provisions of section 13443 of the Education Code (governing dismissal of probationary employees "for cause").

The first notice requirement specified by section 13443 is contained in subdivision (a) as follows: "(a) No later than March 15 and before an employee is given notice by the governing board that his services will not be required for the ensuing year, the governing board and the employee shall be given written notice by the superintendent of the district or his designee, or in the case of a district which has no superintendent by the clerk or secretary of the governing board, that it has been recommended that such notice be given to the employee, *and stating the reasons therefor*." (Italics added.)

The initial notice also advised the affected teachers that the proceeding was being conducted pursuant to sections 13443 and 13447 and thereby informed them that they might, within seven days, file a written request for a hearing, which each of them did. Thereafter, the proceedings to determine the matter were conducted in accordance with the Administrative Procedure Act (ch. 5, commencing with § 11500, pt. I, div. 3 of tit. 2 of Gov. Code) which is incorporated by subdivision (c) of section 13443.

An "Accusation," as the original pleading is called in chapter 5, was served and filed on or about April 5, 1972. Like the March 14 notice, the accusation specified that the reason for terminating the teachers was a drop

in the average daily attendance. It attached an April 4 resolution of the board "to terminate teaching positions by reason of a 6.06% drop in A.D.A. . . ." Issue was joined by the teachers filing timely notices of defense and the matter came on for hearing before William Green, hearing officer of the Office of Administrative Hearings, on April 21, 1972.

At the hearing on April 21 the board presented evidence that there had been a 5.79 percent decline in average daily attendance. When the board sought to introduce evidence supporting the termination of teachers on the basis of a reduction in services, the hearing officer ruled that such evidence was inadmissible unless the accusation was amended to specify reasons for such reduction. Over objection of the teachers, such an amendment was permitted by interlineation, specifying a projected decrease in enrollment for the next year, an increase in class size and the necessity to accommodate budgetary limitations. The hearing officer continued the hearing until May 2 to permit the teachers to prepare a defense to the additional reasons relating to the reduction in services.

At the continued hearing on May 2 evidence was submitted in behalf of the board supporting the necessity for a reduction in services. After the conclusion of the hearing on May 2, the hearing officer submitted his proposed decision on May 8, 1972. The hearing officer concluded that the termination of the services of 13 certificated teaching employees was proper pursuant to the provisions of section 13447, "relating to decline in average daily attendance," and that the termination of the services of a further 30 certificated employees was proper pursuant to other provisions of section 13447, "relating to reduction or discontinuance of a particular kind of service." Upon adoption of the hearing officer's decision by a board resolution of May 12, the services of all 43 teachers were ordered terminated and they were so advised by appropriate notice served on or before May 15, 1972.[2]

This suit was commenced by a petition filed July 10, 1972. It was tried on August 4, 1972. At the conclusion of the trial the judge orally indicated his decision that the district was "entitled to not reemploy 13 of the 43" on account of the reduced average daily attendance, but had no right to terminate any teachers on the ground of reduced services. Assuming this left 30 unauthorized terminations available to benefit petitioners, the court concluded that the board "must rehire the petitioners in these proceedings."

Thereafter, findings of fact and conclusions of law were proposed by petitioners implementing this intended decision.

---

[2]This was the last date for such notification under the provisions of section 13447.

The proposed findings included a "Supplemental Finding of Fact" to the effect that the petitioners as a group prejudicially relied on the March 14 notice, in that: (a) by failing to state reasons other than the decline in average daily attendance said notice led them to believe that though some of them would be terminated the majority would be reemployed, (b) on the basis of such belief they reasonably hoped for reemployment, and (c) they therefore reduced their efforts to find employment elsewhere.

The proposed findings did not include any finding with respect to the seniority of the 13 petitioners in relation to the other 30 teachers who were terminated. The board requested that special findings be made determining "the ranking of each petitioner in relation to the other probationary certificated employees of the District" and determining "which petitioners, if any, respondent is justified in terminating as a result of the 5.79% drop in Average Daily Attendance." Despite such request, the findings and conclusions were signed as originally submitted, including the conclusion that though the board was justified in terminating 5.79 percent of the certificated employees, "in no event are Petitioners herein to be considered for termination."

### Issues

There are only two issues which are determinative of this appeal; they are:

1. Were petitioners lawfully subject to termination for a reason (reduction of services) not specified in the notice of recommendation served March 14, 1972?

2. If the termination of 13 teachers was justified by the reduction in the average daily attendance, was the board properly ordered not to consider petitioners for termination?[3]

### Effect of Omission of Reasons From Initial Notice

 The March 14 notice gave no indication of any reason for termination of petitioners except a reduction in average daily attendance. Petitioners contend that such notice did not serve properly to initiate proceedings to terminate them for any other reason, and consequently the purported ter-

---

[3]Petitioners raise several other issues relating to alleged deficiencies in the proceedings subsequent to the original notice of recommendation. These contentions do not require discussion in view of the court's opinion with respect to the issues as above stated.

mination grounded upon a reduction in services was invalid. Petitioners' argument is based upon the express language of section 13447 and its incorporation of the requirements for *"notices"* specified in section 13443. The board contends, to the contrary, that by incorporating the provisions of the Administrative Procedure Act (Gov. Code, § 11500 et seq.) the Education Code provisions indicate the propriety of subsequent amendment to add additional charges. For the reasons stated below, we agree with the contention of petitioners.

Both the substantive basis and the procedure applicable to the termination of permanent or probationary employees on account of either a reduction in attendance or a reduction or a discontinuance of a particular kind of service are entirely controlled by section 13447 of the Education Code. The procedures with respect to the time and content of the required notices and conduct of the hearing are adopted by incorporation from section 13443. That section, however, deals with "dismissal for cause" and its provisions, other than those specifying procedure, are not applicable to termination incident to a reduction in the number of employees. Thus, the requirement for the giving of a notice of a recommendation that an employee not be reemployed is adopted from subdivision (a) of section 13443 and therefore (1) must be given no later than March 15, and (2) must state the "reasons" for the recommendation. In like fashion, the procedure for conducting the hearing and giving final notice of termination before the 15th of May are incorporated from section 13443. However, the effect of failure to comply with any such adopted procedures is directly governed by section 13447. The provision in this respect is as follows: "In the event that a permanent or probationary employee is not given the *notices* and a right to a hearing as provided for in Section 13443, he shall be deemed reemployed for the ensuing school year." (Italics added.)

The above quoted sentence in section 13447 was adopted by an amendment in 1970. It is significantly different than the parallel provision contained in subdivision (h) of section 13443 which mandates employment for the ensuing school year only when the employee being dismissed for cause is not given the final notice on or before May 15. In view of this circumstance, the conclusion is inescapable that a different result from that specified in subdivision (h) of section 13443 was intended, affording the employee more protection.

There is no legislative history which directly explains the 1970 amendment to section 13447. The legislative history of section 13443 indicates that its mandatory requirement that the final notice be given by May 15 was intended to eliminate the dilemma of the teacher who "cannot logically

seek another teaching position while awaiting the decision" "during a time when districts are interviewing prospective teachers for the following school year."[4]

This history is consistent with the board's concession in its brief that a primary purpose of the notice of recommendation is "to notify the employee of the probability that his services will not be required for the ensuing year so that he may consider looking elsewhere for employment "

Early notification is more significant in relation to reductions in the number of employees of a school district than it is in case of individual dismissal for cause. Greater competition for alternate jobs is logically to be expected and the pendency of the proceedings is no impediment to obtaining them, as it might be in the case of a dismissal for cause.

It is, therefore, appropriate to construe the provisions of the 1970 amendment to section 13447 as intending to insure that before the March 15 date the affected employee be informed of facts upon which he can reasonably assess the probability he will not be reemployed.

Under the facts of this case, it is easily demonstrated that the reason stated in the notice of recommendation did not inform many of the petitioners that their jobs were in jeopardy. A list of the first and second year probationary teachers, in order of seniority, was received in evidence by the hearing officer. This list was prepared so that the requirements of section 13447 that "services of such employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 13262 and 13263 of this code" could be carried out. The teacher with highest seniority on said list is petitioner Judith Udko; presumably, 42 teachers were subject to termination before she was. Since the reduction in average daily attendance was approximately 6 percent, which would justify termination of only 13 teachers, petitioner Udko was not given any reasonable basis for seeking alternative employment.

Though the above example may not be typical, it serves to illustrate the fact that if the requirement of notice of recommendation is to have its intended effect, the subsequent proceedings must be limited to termination for a reason stated therein.

 The board's argument based upon the adoption of the Administrative Procedure Act as applicable to the hearings required by Education

---

[4]Senate Journal Appendix (1965 Reg. & Ex. Sess.) 1st & Ex. Sess., Report of the Senate Fact Finding Committee on Education to the Legislature, pages 21-22.

Code section 13447 is not persuasive. If there were any inconsistency between the provisions of section 11507 of the Government Code permitting amendments to add charges to an accusation, and the provisions of section 13447 of the Education Code above set forth, the latter would control. It is a well established principle of statutory construction that in case of inconsistency, particular provisions are paramount to general provisions. (Code Civ. Proc., § 1859.) The Administrative Procedure Act is generally applicable to a wide range of administrative proceedings, whereas section 13447 of the Education Code is a specific provision relating to the particular kind of termination of employees here involved.

In any event, there is no inconsistency. The Administrative Procedure Act relates to the hearing stage which is "initiated by filing an accusation." (Gov. Code, § 11503.) Section 13447 of the Education Code, insofar as it adopts the requirement of a notice of recommendation, states a condition precedent to any hearing being called for. Both may operate in a given case. An accusation might well be filed which did not set forth facts supporting reasons adequately specified in the original notice of recommendation. Under such circumstances, an amendatory accusation would be appropriate under conditions stated in section 11507 of the Government Code.

There is an additional reason for construing section 13447 of the Education Code in accordance with the petitioners' contentions. It provides for the termination of a valuable right of employment. As the court said in *Fresno City H. S. Dist.* v. *De Caristo,* 33 Cal.App.2d 666, 672 [92 P.2d 668]: "Such a statute should be strictly construed." (See also *Board of Trustees* v. *Porini,* 263 Cal.App.2d 784, 789 [70 Cal.Rptr. 73].)

We hold, therefore, that the "notices" referred to in section 13447 of the Education Code necessary to avoid the consequence that the employee "be deemed reemployed" include the March 15 notice of recommendation and the required specification of "reasons" therein. From this holding the conclusion necessarily follows that the board had no power to terminate petitioners for any reason not specified in the notice of March 15.

The language employed in the requirement that the employee "shall be deemed reemployed" is identical to that which was employed in subdivision (h) of section 13443 as enacted in 1965. Its effect was considered in *Ward* v. *Fremont Unified Sch. Dist.,* 276 Cal.App.2d 313 [80 Cal.Rptr. 815]. The court said, in that respect, at page 322: ". . . The rule in California and the majority of the United States jurisdictions is that when a consequence is enunciated for failing to comply with an act on a given

date, that date is deemed to be jurisdictionally mandatory, not directory. [Citations.]

"In view of the above and the clear language of the statute as amended in 1965, we cannot accept defendants' contention that the jurisdictional time limit is merely directory. We conclude that the May 15, 1967, notice constituted a jurisdictional deadline after which defendants could not act to terminate Ward's services."

We need not, therefore, be concerned that the evidence is insufficient to support the "Supplemental Finding of Fact"[5] with respect to petitioners' alleged reliance and prejudice. Since the board was without power to act, the individual state of mind of the petitioners was not relevant, nor is it necessary to show any actual prejudice.

### *Propriety of the Court's Order That Petitioners Not Be Considered for Termination*

■ By its incorporation of the conclusions of law, the judgment required the defendant board, in reconsidering its action, to exempt petitioners from termination. Two conclusions of the court related to this matter. They are conclusion No. 2 to the effect that though "Respondent [board] is justified in terminating 5.79% of the certificated employees, . . . in no event are Petitioners herein to be considered for termination," and conclusion No. 3 that "The action of terminating these petitioners is a reduction or discontinuance of a particular kind of service as that language is defined in Education Code, section 13447."

Petitioners do not question the finding by the hearing officer adopted by the court that the board was entitled to terminate 5.79 percent or 13 of its employees. As stated by petitioners in their brief:

"Therefore, the only testimony that should have been considered at the hearing was that relating to the decline in ADA which would have entitled the governing board to terminate the services of a maximum of 13 teachers." The insufficiency of the original notice to justify proceedings to terminate petitioners for other reasons did not invalidate such proceedings insofar as they related to the reduction in average daily attendance. The trial court's holding that petitioners were not to be considered for termination may not be sustained unless there was some factual basis for concluding that none of them would fall within the bottom 13 on the seniority list.[6] The trial court made no finding of fact in this respect.

---

[5] Petitioners concede that there was no evidence to support this finding.

[6] As previously noted, the board was required to terminate the employees "in the inverse order in which they were employed." (Ed. Code, § 13447.)

This court may not assume that the trial court found all of the petitioners to have such seniority that they were not subject to termination as one of the 13 employees the board was entitled to terminate for reduction in average daily attendance; the omission was brought to the attention of the court by the board's request for special findings in this respect. (Code Civ. Proc., § 634.) Moreover, the seniority list was a part of the record in the administrative proceeding and it showed that at least one of the petitioners, petitioner L. Alexander, was sixth from the bottom of the list of 43 probationary teachers.

The direction in the judgment that the board reconsider its action in light of the court's findings of fact and conclusions of law is erroneous insofar as it incorporates the prohibition against considering petitioners for termination.

It is unnecessary to reverse, however, inasmuch as the same result can be accomplished by modification of the judgment. The judgment is modified by strikingfrom page 2 thereof lines, 4, 5 and 6, the following language, "and to reconsider its action in the light of this court's findings of fact and conclusions of law," and substituting therefor the following, "and to reconsider its action in light of the applicable law."

As modified, the judgment is affirmed. Each side is to bear its own costs on appeal.

Cobey, Acting P. J., and Allport, J., concurred.