[Civ. No. 40977. First Dist., Div. Four. Jan. 13, 1978.]

CAMPBELL ELEMENTARY TEACHERS
ASSOCIATION, INC., et al., Plaintiffs and Appellants, v.
GORDON ABBOTT et al., Defendants and Respondents.

WEST VALLEY FEDERATION OF TEACHERS,
LOCAL 1953, AFT, AFL-CIO et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE CAMPBELL UNION SCHOOL
DISTRICT et al., Defendants and Respondents.

800

**COUNSEL**

LaCroix & Schumb, Joseph G. Schumb, Jr., Van Bourg, Allen, Weinberg & Roger and Stewart Weinberg for Plaintiffs and Appellants.

Selby Brown, Jr., County Counsel, and Robert T. Owens, Deputy County Counsel, for Defendants and Respondents.

OPINION

CHRISTIAN, J.—Campbell Elementary Teachers Association, Inc., West Valley Federation of Teachers, Local 1953, AFT, AFL-CIO, and certain individual parties have appealed from a judgment denying mandate to annul certain personnel decisions of respondent Governing Board of the Campbell Union School District.

In the fall of 1974, the Campbell Union School District began experiencing a decline in pupil enrollment. At several meetings the governing board discussed enrollment trends, staffing and the closing of schools. At a meeting on December 12, 1974, the board directed the district superintendent to submit a report in January of 1975, presenting the staffing needs for the 1975-1976 school year. In response to this request it was recommended that the board adopt a resolution which would provide that the certificated staff for 1975-1976 be reduced to correspond to the reduction in average daily attendance (ADA) over the past two years and that certain services be reduced or discontinued. This recommendation was adopted by the board in a resolution dated February 27, 1975.

On March 4, 1975, a revenue limit increase election was held in the school district. The voters did not approve an increase in the revenue limit. A few days later, the governing board adopted a resolution eliminating certain services for the 1975-1976 school year. The board directed the superintendent to send appropriate notices of the recommendation not to rehire to the individuals affected by the board's action.

Notices were sent to the affected employees stating two reasons for termination—a decline in average daily attendance and the elimination or reduction of a particular service. (See Ed. Code, §§ 13443 [now § 44949 of the reorganized Ed. Code], 13447 [now Ed. Code, § 44955].)

Appellants requested a hearing. A hearing was held before a hearing officer designated by the office of administrative hearings. The hearing officer issued a proposed decision determining that the district could lawfully terminate 102 employees: 89 on the basis of the discontinuance

or reduction of specific services, and 13 because of a decline in ADA. The hearing officer also determined that six employees on the district's layoff list could not be terminated; their relative seniority had not been correctly rated by the district. Striking 6 names from the list, the hearing officer concluded that the 80 remaining names on the "corrected" list could be terminated. He also concluded that 11 other employees could be terminated "only for reduction or discontinuance of the services performed by such persons."

The governing board adopted the proposed decision of the hearing officer and directed that final notices of termination be given to the affected employees as required by law. The board determined, however, to withdraw such action against certain employees and notices of termination were sent to only 64 certificated employees. (This number included 53 employees who were classified as permanent or probationary, and 11 employees who were classified as temporary.) The present litigation was then commenced.

█ Appellants contend that in reviewing the administrative record the trial court erred in failing to apply the independent judgment test. This contention is without merit: in fact, the independent judgment test was applied. █ Where the termination of a probationary teacher, rather than a permanent teacher, is involved, judicial review of factual determinations by the administrative agency is limited to the substantial evidence test since a probationary teacher has no vested right to be rehired. (See *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 824 [129 Cal.Rptr. 443, 548 P.2d 1115]; *Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977, 982 at fn. 3 [133 Cal.Rptr. 385].) █ In its memorandum of decision the trial court stated that it was applying the independent judgment test "despite the fact that the Court is of the opinion that the substantial evidence test is the proper one to be used insofar as the issues and matters relating to all petitioners, except two, are concerned." In its findings of fact and conclusions of law the trial court stated: "The court having read all the testimony recorded during the proceeding before the hearing officer of the Office of Administrative Hearings and reviewing the various Exhibits received during such hearing and the evidence, both oral and documentary, introduced by the parties and hearing the arguments of counsel, and *weighing the evidence for its sufficiency and credibility, and reaching an independent judgment* of the validity of the proposed decision of the hearing officer and the decision of the Board, the court being fully advised in the matter, makes the following findings of fact: . . . ." (Italics added.) The court's conclusion

of law VI states that "As to petitioners Carol Crow and Wenonah Brichetto, the standard of review is the independent judgment test; as to all other petitioners it is the substantial evidence test. The court has applied, however, the independent judgment test as to all petitioners." Therefore, appellants' contention is contrary to the record.

Under section 13447 of the Education Code, a school district may reduce the number of its certificated employees to meet a decline in average daily attendance or because of a decision by the school board to reduce or discontinue a "particular kind of service." (Ed. Code, § 13447; see *Karbach* v. *Board of Education* (1974) 39 Cal.App.3d 355, 358, 361 [114 Cal.Rptr. 84].) The school district must give preliminary notice of its intent not to rehire by March 15 of the year preceding dismissal. (*Rutherford* v. *Board of Trustees* (1974) 37 Cal.App.3d 775, 778 [112 Cal.Rptr. 560].) "Notice of such termination of services either for a reduction in attendance or reduction or discontinuance of a particular kind of service to take effect not later than the beginning of the following school year, shall be given before the 15th of May in the manner prescribed in Section 13443, and services of such employees shall be terminated in the inverse of the order in which they were employed, as determined by the board in accordance with the provisions of Sections 13262 and 13263 of this code." (Ed. Code, § 13447.) The certificated employee is entitled to a hearing conducted by an administrative law judge. (See Ed. Code, §§ 13447, 13443, subd. (c).) "In the event that a permanent or probationary employee is not given the notices and a right to a hearing as provided for in Section 13443, he shall be deemed reemployed for the ensuing school year." (Ed. Code, § 13447.)

The initial notice requirement set forth in section 13443, subdivision (a), of the Education Code is as follows: "No later than March 15 and before an employee is given notice by the governing board that his services will not be required for the ensuing year, the governing board and the employee shall be given written notice by the superintendent of the district or his designee, or in the case of a district which has no superintendent by the clerk or secretary of the governing board, that it has been recommended that such notice be given to the employee, and stating the reasons therefor."

█ Relying upon *Karbach* v. *Board of Education, supra,* 39 Cal.App.3d 355, appellants contend that the notice given was inadequate in failing to state the particular reason for the decision to terminate. Appellants contend that in notifying them that the reason for the

termination was either the decline in average daily attendance or the elimination or reduction of a particular kind of service, they were not adequately notified of the specific reason for their termination. In *Karbach,* the governing board notified certain probationary teachers that they would not be reemployed for the ensuing school year on the ground of a decline in average daily attendance. However, at the administrative hearing, the board was allowed to present evidence justifying the decision not to rehire the teachers on the basis of a new theory, reduction in services. The court held that the board had no power to terminate the teachers for any reason not specified in the original notice and that the terminations on the ground of a reduction in services were therefore invalid. *Karbach* is thus to be distinguished from the present case; here there were no terminations for any reasons not specified in the original notice. Both reasons were stated, and were supported by evidence at the hearing.

██ Appellants contend that the resolutions adopted at the board meetings on February 27 and March 13, 1975, are void because the posted agendas for those meetings failed to apprise the public and appellants of the matters considered.

Education Code section 966 provides in relevant part as follows:

"Except as provided in Section 54957 of the Government Code or in Section 967, all meetings of the governing board of any school district shall be open to the public, and all actions authorized or required by law of the governing board shall be taken at such meetings and shall be subject to the following requirements:

" . . . . . . . . . . . . . . . . . .

"(b) A list of items that will constitute the agenda for all regular meetings shall be posted at a place where parents and teachers may view the same at least 48 hours prior to the time of said regular meeting, and, in the case of special meetings, at least 24 hours prior to said special meeting."

In *Carlson v. Paradise Unified Sch. Dist.* (1971) 18 Cal.App.3d 196 [95 Cal.Rptr. 650], the posted agenda for the regular meeting of the governing board contained an item designated "Continuation school site change." At the meeting, the governing board took action under that agenda item to change the location of the district's continuation high

school and to discontinue elementary school education at one school and transfer the elementary students to another school in the district. A preliminary injunction was issued by the court enjoining the closure of the school on the ground that the agenda-posting requirements of Education Code section 966 were mandatory and had not been complied with in that case. Thus, the court held that the trial court had not abused its discretion by granting an injunction. The *Carlson* court stated: "To alert the general public to such issues, adequate notice is a requisite. In the instant case, the school board's agenda contained as one item the language 'Continuation school site change.' This was entirely inadequate notice to a citizenry which may have been concerned over a school *closure.*" (18 Cal.App.3d at p. 200.) In *Carlson,* the posted agenda made absolutely no reference to the fact that the closure of the elementary school would be discussed. In the present case, the February 27, 1975, agenda contained an item under "New Business" entitled "Resolution Regarding Certificated Employees" and the March 13, 1975, agenda stated, under "Old Business," an item entitled "Consideration of Resolution to Reduce Educational Programs and Services in addition to Reductions Authorized on February 27, 1975—Oral." The posted agenda for the March 13, 1975, meeting adequately notified the public that the board proposed to discuss the reduction of educational services. However, the posted agenda for the February 27, 1975, meeting, stating that a "Resolution Regarding Certificated Employees" would be considered, was an entirely inadequate notice of the board's intended plans. The agenda item, "Resolution Regarding Certificated Employees," could have referred to any number of routine resolutions concerning certificated employees and cannot be said to have given fair warning that a reduction in staff or termination of employees would be considered.

The question remains whether the posted-agenda requirement of section 966, subdivision (b), of the Education Code is mandatory and jurisdictional, or merely directory. ■ The general rule is that failure to comply with a mandatory provision of a statute renders the proceeding to which it relates void, while noncompliance with a directory provision of a statute does not result in the invalidity of the proceeding or action taken. (82 C.J.S., § 374, pp. 868-869; see *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774 [7 Cal.Rptr. 805].) There is, of course, a duty to comply even with purely directory provisions (82 C.J.S., § 374, p. 869). Whether a statutory provision is mandatory or directory depends upon legislative intent. (*DeWitt* v. *Board of Supervisors* (1960) 53 Cal.2d 419, 425 [2 Cal.Rptr. 1, 348 P.2d 567].) "Consideration must be given to the entire statute, its nature, its object, and the consequences which

would result from construing it one way or the other, and the statute must be construed in connection with other related statutes." (82 C.J.S., § 376, pp. 870-871.) Where consequences are attached to a failure to act in accordance with legislative direction, such direction is mandatory. (*Whitley* v. *Superior Court* (1941) 18 Cal.2d 75, 79 [113 P.2d 449].) In this case, however, the statute includes no means of enforcing its requirements. Generally, where no means of enforcement are described in the statute, the requirements of that section are directory and not mandatory. (*Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 475 [85 Cal.Rptr. 924]; *Gowanlock* v. *Turner* (1954) 42 Cal.2d 296, 301 [267 P.2d 310]; *Adler* v. *City Council, supra,* 184 Cal.App.2d 763, 774.)

Nevertheless, in *Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 333, 336 [118 Cal.Rptr. 637, 530 P.2d 605], the California Supreme Court stated that the provisions of section 966 of the Education Code are mandatory and that noncompliance with the provisions of the statute, such as by failing to list an item of business on the agenda, invalidates the board's action taken with respect to that item.

■ In the present case, however, the governing board of the school district was not even required to consider the matter of employee terminations in open session. The governing board may properly consider personnel matters in executive session without posting any agenda as to the items considered in executive session. (See Ed. Code, § 966; Gov. Code, § 54957; *Lucas* v. *Board of Trustees* (1971) 18 Cal.App.3d 988, 992 [96 Cal.Rptr. 431]; see also *Krausen* v. *Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 404 [116 Cal.Rptr. 833]; *Cozzolino* v. *City of Fontana* (1955) 136 Cal.App.2d 608, 612 [289 P.2d 248]; 44 Ops.Cal.Atty.Gen. (1964) 147.) Section 54957 of the Government Code authorizes executive sessions on personnel matters and is an exception to the open-meeting requirement of Education Code section 966 and an exception to the posted-agenda requirement of Education Code section 966, subdivision (b). (*Lucas* v. *Board of Trustees, supra,* 18 Cal.App.3d at p. 992.) Thus, when the board was not required to act in open session with a posted agenda of the employment matter at all, it cannot be said that the board was without authority to pass the employment resolution involved because the posted notice of the item was insufficiently detailed. The board did not act in excess of its jurisdiction.

Under sections 13084 and 13085 of the Education Code, which were in effect during the events in question, public school employers were

obligated to meet and confer upon request regarding matters relating to employment conditions and employer-employee relations including but not limited to wages, hours and other terms and conditions of employment and procedures relating to the definition of educational objectives. (See *San Juan Teachers Assn.* v. *San Juan Unified Sch. Dist.* (1974) 44 Cal.App.3d 232 [118 Cal.Rptr. 662].) Appellants contend that the board resolutions which were adopted in February and March, reducing certificated staff, concerned a matter relating to appellants' employment conditions under sections 13084 and 13085 of the Education Code and that the resolutions are void because the school board failed to "meet and confer" with the certificated employees prior to terminating the affected employees. Appellants contend that although the Certificated Employees' Council "filed its package" with the governing board in either late January or early February 1975, including proposals relating to staffing for the 1975-1976 school year, the governing board neglected to meet and confer as requested. Thus, appellants argue that the actions taken by the governing board on February 27, 1975, and March 13, 1975, were invalid.

The record establishes that the Certificated Employees' Council submitted certain proposals regarding staffing for the 1975-1976 school year, either in late January or February of 1975, and there was a request to meet and confer. However, there is no evidence that the district refused to meet and confer on the matter. Thus, the determination of the trial court is to be upheld, that the Winton Act was not violated (see Evid. Code, § 664).

Additionally, as respondents point out, the board's action to reduce staff would be thwarted unless initial notices were given to the affected employees prior to March 15, because the notice deadline requirement of section 13443 of the Education Code is jurisdictional. (See *Rutherford* v. *Board of Trustees, supra,* 37 Cal.App.3d 775.) "If the normal sequence [of the Winton Act (Gov. Code, § 13080 et seq.)] acts, in effect, to prohibit the employer from making the final decision, this sequence may be required to yield." (*Certificated Employees Council* v. *Richmond Unified Sch. Dist.* (1974) 43 Cal.App.3d 435, 439-440 [117 Cal.Rptr. 921]; see also *San Juan Teachers Assn.* v. *San Juan Unified Sch. Dist., supra,* 44 Cal.App.3d 232, 248, 258.)

■ Appellants contend that the governing board's action in passing a resolution to eliminate all special education, all psychological and health services, and all instrumental music programs was arbitrary and capri-

cious because the board acted without considering the effect such action would have on the quality of education in the district and because the board made no effort to determine which services were mandated by the state.

"In determining whether the decision of a school board is reasonable as distinguished from fraudulent, arbitrary, or capricious, its action is measured by the standard set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion on the same subject." (*Arthur* v. *Oceanside-Carlsbad Junior College Dist.* (1963) 216 Cal.App.2d 656, 663 [31 Cal.Rptr. 177].) The record reveals that the board resolution of March 13, 1975, was not an arbitrary decision arrived at through the exercise of mere caprice, but rather was a decision supported by a fair and substantial reason. It is true that the governing board hoped that when its final budget was adopted it would not be necessary to terminate all of the enumerated services. Although the governing board wanted to keep as many certificated employees as possible, the school district was facing many financial uncertainties, and the board acted in an attempt to allow the district maximum flexibility in determining staffing for the ensuing school year in light of both available resources and needs. After the unsuccessful tax revenue election on March 4 and before the meeting of March 13 at which the second resolution was adopted, the governing board met and consulted with the business manager of the district regarding the district's financial position. The deputy superintendent reported to the board concerning "the consequences that would come to pass in terms of the District's educational program if these terminations were consummated." It cannot be said that the board's action was capricious.

Under Education Code section 13447, a school district may reduce its certificated staff by a proportion that corresponds to the decrease in average daily attendance. Appellants contend that, in the present case, the decline in average daily attendance was improperly computed. They contend that in computing the decline in ADA the school district should calculate the average daily attendance for the *sixth month* of the present school year (i.e., the ADA for February) and compare this figure with the ADA for February of either of the two preceding school years. The ADA for the month of February in the 1974-1975 school year was 9,441.50, whereas the ADA for the month of February in the 1972-1973 school year was 10,135.78—a decline of 6.8 percent.

Respondents contend that the proper figures to be used (and those which were in fact chosen by the hearing officer) are 9,339.53 for the 1974-1975 school year compared with 10,177.78 for the 1972-1973 school year, based upon the average daily attendance figures *for each of the first 6 months* of the school years in question. As the hearing officer and trial court found, these figures reveal a 7.6 percent decline in attendance.

As the trial court stated, "[t]he clear wording of section 13447 indicates that the hearing officer correctly determined which figures should be relied upon in arriving at the overall percentage decrease in attendance." Section 13447 of the Education Code refers to "the average daily attendance in all of the schools of a district *for the first six months* in which school is in session." (Italics added.) ■ Thus, the school district must rely on those figures which reflect an average of each month of the first six of a school year, and not merely on the sixth month alone. (See Comment, *Teacher Dismissals Under Section 13447 of the California Education Code* (1976) 27 Hastings L.J. 1401, 1404.)

Both the hearing officer and the trial court found that the school district was entitled to terminate 13 certificated employees due to the 7.6 percent decrease in average daily attendance. This figure was derived by applying the 7.6 percent decrease in ADA to the base year of 1972-1973. (See *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571 [116 Cal.Rptr. 183]; Comment, *Teacher Dismissals Under Section 13447 of the California Education Code, supra,* 27 Hastings L.J. 1401, 1405.) In 1972-1973, the district employed 530 certificated employees. A 7.6 percent reduction of 530 employees equals 40 employees; thus, the district could reduce its staff to 490 employees (530 − 40 = 490). Therefore, the hearing officer and trial court concluded that since the district had 503 certificated employees in its employ in the 1974-1975 school year, it could properly terminate 13 employees based upon the decline in ADA (503 − 490 = 13).

■ Appellants attack this latter computation, claiming that it does not accurately account for attrition. They argue that the 503 figure should be further reduced by the number of resignations and leaves of absence to be effective in the following (1975-1976) school year. In *Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977, 982 [133 Cal.Rptr. 385], the court held that a school district must consider *positively assured* attrition "such as that which had already occurred in the computation period and mandatory retirements." In the present case, only one resignation had been received and accepted by the governing board prior to the hearing.

Additionally, 15 leaves of absence for the 1975-1976 school year had been accepted. Appellants contend that therefore the 503 employment figure for the 1974-1975 school year should be further reduced by 16 (i.e., the number of resignations and leaves of absence to be effective in the following year). Respondents apparently concede that, under *Lewin,* the number of certificated employees the district may terminate because of a decline in average daily attendance is 12, rather than 13, because of the one resignation which occurred during the computation period. Respondents argue, however, that positively assured attrition is limited to retirements, resignations and deaths occurring within the computation period, and that it does not include those employees who are merely on leave for the subsequent school year. In determining attrition the school district is required to consider "the number of certificated employees who [have] *departed the system* in the computation period." (*Burgess* v. *Board of Education, supra,* 41 Cal.App.3d 571, 579; italics added.) Respondents contend that certificated employees who have requested leave for the following school year have not departed the system.

Respondents are correct in their contention that a teacher employed by the district but on leave of absence has not "departed the system." In *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 759 [112 P.2d 229], the court stated: " 'A teacher employed but on leave of absence is, nevertheless, an employee of the Board (*Fairchild* v. *Board of Education,* 107 Cal. 92 [40 Pac. 26]; *Kennedy* v. *Board of Education,* 82 Cal. 483 [22 Pac. 1042].) It has been held that in determining a teacher's seniority rights, the relation of employer and employee continues to exist although the teacher is on leave of absence, and that a teacher on leave of absence is within the terms of a resolution retaining "the present staff of teachers." (*Ryan* v. *Burk,* 25 Cal.App. (2d) 342 [77 Pac. (2d) 224].)' " (See also *Ryan* v. *Burk* (1938) 25 Cal.App.2d 342, 345 [77 P.2d 224].)

Section 13462 of the Education Code provides that: "At the expiration of the leave of absence of the employee, he shall, unless he otherwise agrees, be reinstated in the position held by him at the time of the granting of the leave of absence." (See also Ed. Code, § 13460.) The district was not required to consider those certificated employees who had requested leaves of absence for the next school year in determining positively assured attrition occurring during the computation period.

■ Under section 13447 of the Education Code, a school district may reduce its certificated staff by reducing or discontinuing a "particular kind of service." (See Ed. Code, § 13447.) "A board may 'reduce services'

either by determining that a certain type of service to students shall not, thereafter, be performed at all by anyone, or . . . by determining that proffered services shall be reduced in extent [in that] fewer employees [will be] made available to deal with the pupils involved. Either (or both) determination falls within the statutory language." (*Rutherford* v. *Board of Trustees* (1976) 64 Cal.App.3d 167, 178-179 [134 Cal.Rptr. 290].) Moreover, a school district may properly reduce services pursuant to section 13447 in a statutorily mandated course as long as the code-mandated services does not fall below the statutory minimum. (*Degener* v. *Governing Bd.* (1977) 67 Cal.App.3d 689, 695, 696 [136 Cal.Rptr. 801]; see Comment, *Teacher Dismissals Under Section 13447 of the California Education Code, supra,* 27 Hastings L.J. 1401, 1411.)

In the present case, unlike *Burgess* v. *Board of Education, supra,* 41 Cal.App.3d 571, the governing board reduced or eliminated specified services and not teaching in general (see *Degener* v. *Governing Bd., supra,* 67 Cal.App.3d 689). The board authorized the elimination or reduction of services provided by reading specialists, consultants, nurses, counselors, instrumental music teachers, master teachers, traveling librarians, learning assistance teachers, psychologists, speech therapists and title I specialists.

Appellant Campbell Elementary Teachers Association contends that library services are mandated by law (see Ed. Code, § 7050) and that, therefore, in order to continue mandated library services, the district must employ certificated librarians. It is also contended that the services of school nurses are mandated by law. It is appellant's contention that where a particular service is mandated by the Legislature, and thus could not be eliminated by the district, the service may not be reduced by the district: "Since [mandated services] cannot be discontinued entirely they may not be reduced." This contention must be rejected. Particular services provided by the district in excess of the minimum mandated by statute are subject to discretionary reduction under section 13447 (*Degener* v. *Governing Bd., supra,* 67 Cal.App.3d 689, 695, 696; see also *Rutherford* v. *Board of Trustees, supra,* 64 Cal.App.3d 167). In *Degener, supra,* 67 Cal.App.3d at page 695, the court stated: "Here, we are faced with a reduction of a specific curricular offering, namely, physical education. In the latter context, logic and sound policy dictate that '[a]s long as a district does not reduce its offerings in a code-mandated course below the level required by law, that reduction should be considered a reduction of a particular kind of service. . . .' (See *Teacher Dismissals Under Section 13447 of the California Education Code* (1976) 27 Hastings

L.J. 1401, 1411, cited by the Supreme Court in *Gassman* v. *Governing Board* (1976) 18 Cal.3d 137, 146 [133 Cal.Rptr. 1, 554 P.2d 321].)" Additionally, "even though a service must continue to be performed in a school district, the particular kind of service of the employee may be eliminated." (*Rutherford* v. *Board of Trustees, supra,* 64 Cal.App.3d at p. 177.)

Appellant Campbell Elementary Teachers Association also argues that "the District may not terminate teachers under the guise of reduction in particular services when the District is actually continuing to offer the same services, but by different personnel."

It is true that a district may not dismiss an employee pursuant to section 13447 and yet continue the identical kind of service and position held by the terminated employee. (*Chambers* v. *Board of Trustees* (1940) 38 Cal.App.2d 561, 566 [101 P.2d 727].) But the *particular kind* of service of the employee may be eliminated even though a service continues to be performed or provided in a different manner by the district. (See *Davis* v. *Berkeley School Dist.* (1934) 2 Cal.2d 770 [40 P.2d 835]; *Fuller* v. *Berkeley School Dist.* (1934) 2 Cal.2d 152 [27 P.2d 109, 40 P.2d 831]; *Jones* v. *Board of Trustees* (1935) 8 Cal.App.2d 146 [47 P.2d 804].) In *Davis* v. *Berkeley School Dist., supra,* 2 Cal.2d 770, the governing board discontinued the service performed by so-called traveling art teachers —experts who went from school to school giving instruction in art. Thereafter, the district continued to offer art instruction but only by the regular departmental teachers. The court affirmed the judgment denying a writ of mandate to compel reinstatement of one of the traveling art teachers on the ground that the *particular service* performed by the petitioner had in fact been discontinued even though the teaching of art was a service still being performed by the school district. Where, as here, the district apparently contemplated a change in the method of teaching or in the particular kind of service in teaching a subject, there was a discontinuance of the former particular kind of service.

██ Appellant West Valley Federation of Teachers contends that Carol Crow was improperly terminated since certified employees with less seniority were being retained by the district to perform services which Crow was certificated and competent to render. The argument is that Crow should have been allowed to "bump" less senior employees. Section 13447 of the Education Code provides in pertinent part: ". . . the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other

employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render. . . . The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render." In *Krausen* v. *Solano County Junior College Dist., supra,* 42 Cal.App.3d 394, 402, the court stated: "The language used in the final paragraph of the statute is not ambiguous. It contains a mandatory directive to the board to determine whether any employee whose employment is to be terminated for a reduction in attendance or for a reduction in a particular type of service possessed the seniority and qualifications which would entitle him to be assigned to another position. It seems clear that the provision in question does confer seniority rights and bumping privileges upon probationary, as well as permanent, employees. *The provision has been interpreted to mean 'that when a [particular] service is eliminated [or reduced] the holder of the position is not necessarily terminated, but is entitled to another assignment to which his seniority and qualifications entitle him.'* (*Otto* v. *Davie* (1973) 34 Cal.App.3d 570, 575 [110 Cal.Rptr. 114].)" (Italics added; see *Wellbaum* v. *Oakdale Joint Union High School Dist.* (1977) 70 Cal.App.3d 93, 98 [138 Cal.Rptr. 553]; see also *Gassman* v. *Governing Board* (1976) 18 Cal.3d 137, 144 [133 Cal.Rptr. 1, 554 P.2d 321]; but see *Rutherford* v. *Board of Trustees, supra,* 64 Cal.App.3d 167, 179-180.)

Carol Crow testified at trial that she had been hired by the district on September 1, 1971, as a counselor. She possessed both a pupil personnel credential and a standard secondary credential.

Section 13314.3, subdivision (b), of the Education Code, provides in relevant part:

"(b) If an employee is authorized to render service in more than one type of position for which certification qualifications are required, either by virtue of his possession of one certification document authorizing service in two or more of such positions, or by virtue of his possession of separate certification documents authorizing service in two or more such positions, or any combination thereof, he shall, upon satisfying all other requirements prescribed by law, acquire permanent status as follows:

"(1) If he is authorized to render service as a classroom teacher, he shall acquire permanent status as a classroom teacher.

"(2) If he is not authorized to render service as a classroom teacher, he shall acquire permanent status below the administrative or supervisory level as a staff employee with multiple qualifications. His right to serve in one or more of the positions for which he is qualified to serve shall be subject to the power of assignment of the school district governing board." Appellant contends that, under section 13314.3, subdivision (b)(1), Crow was entitled to permanent status as a classroom teacher. Thus, appellant contends that, when Crow's counselor position was eliminated, she was entitled under section 13447 to be reassigned to a classroom teaching position because of her seniority and qualifications.

Under sections 13275 and 13163 of the Education Code, a certificated employee is obligated to record his or her credential with the county board of education. At trial, Crow testified that in January or February of 1972, shortly after she was hired by the district, she placed her two credentials in one envelope which was marked "credentials" and handed the envelope to the clerk at the county credentials office for the purpose of recording her credentials. Apparently because of a clerical error, only the counselor credential was in fact recorded; the teaching credential was not recorded. Crow was not aware of this error until May of 1975. According to Crow's testimony, a friend who was present at the board meeting on the night of May 12, 1975, called Crow the following morning to tell Crow that she had been dismissed. That same day, May 13, 1975, Crow called the county board of education concerning her credential and, later that day, took her teaching credential to the county office and had it registered. But at the time of the board's action, the board had no knowledge of the fact that Crow possessed a teaching credential in addition to her counseling credential. Crow could have checked to determine whether her credentials had been properly recorded. Having failed to determine that her credentials were properly recorded, Crow cannot fairly charge the governing board with information which it did not have and was not responsible for recording.

Appellant West Valley Federation of Teachers further argues that the district improperly terminated Crow since she properly registered her teaching credential on May 13, 1975—two days prior to the district's May 15 deadline for sending the final notice of termination but one day after the board had in fact sent its final notices. The May 13, 1975, registration of Crow's teaching credential in fact came one day after the governing board had taken final action to terminate her services. Appellant argues that "[w]here it appears prior to the jurisdictional deadline that a teacher has more qualifications or competency than originally believed, those

facts must be taken into consideration even though they were not known when the March 15 letter was sent." This contention must be rejected. The credentialed employee has the burden of recording his or her own credentials. In *Degener* v. *Governing Bd., supra,* 67 Cal.App.3d 689, 698, the court stated: "As pointed out by the Board: '[A] school board can only authorize a teacher to teach within his credential. At the time a district must prepare its lay-off notices it must analyze carefully the number of people to be laid-off, the seniority listing of employees, and the credentials and qualifications of the individuals. If a district decides it must lay-off a certain number of employees, it must give those employees proper notice. Once March 15 passes by a district may not notify additional employees that they may be terminated. . . . A district does not have the right to add to the lay-off list.' "

The governing board is not to be held responsible for the fact that Crow recorded her credential after all notices had been sent, a hearing held, and a decision rendered. To adopt appellant's position, "would alter and conflict with the provisions and purposes of the statute—particularly that which sets March 15 as the last day for notification to employees by the Board of termination of employment and makes reemployment assured absent notice and would effectively challenge the statutory scheme adopted by the Legislature which cannot be sanctioned." (*Degener* v. *Governing Bd., supra,* 67 Cal.App.3d at p. 699.)

 Appellant Campbell Elementary Teachers Association contends that 11 teachers, classified as temporary employees, were in fact probationary employees. Thus, appellant argues, the 11, as probationary employees, should have been, but were not, given the notices of termination and the hearing required by sections 13443 and 13447 of the Education Code. Therefore, appellant argues, these improperly classified employees must be reemployed by the district.

The teachers in question each received a contract from the school district which indicated temporary status. "[U]nless statutory mandate compels otherwise, the position of the teacher is created and fixed by the terms of the contract of employment." (*Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702, 705 [107 Cal.Rptr. 671]; see *Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59, 61 [134 Cal.Rptr. 220].)

Appellant's argument is as follows: Section 13336 of the Education Code defines substitute employees as those persons employed "to fill positions of regularly employed persons absent from service." It contends that the 11 hired as substitute teachers were not filling positions of

those "absent from service" but were filling positions that were vacant because of retirement or resignations or were filling newly created positions. Thus, appellant argues, under sections 13334 and 13336 of the Education Code, these teachers were not substitutes but were, in fact, probationary employees and that status could not be waived by them by signing contracts as temporary employees. (Ed. Code, § 13338.1; *Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482 [107 Cal.Rptr. 777, 509 P.2d 689].)

The trial court determined that, under section 13337.3 of the Education Code, the 11 employees were properly hired as temporary "based upon the need" for additional employees generated by absences due to leaves of absence or long-term illness, even though the temporary employee may not have been appointed to fill the very same duties vacated by an employee on leave.

Respondents point out, and the trial court found, that the district had 22 certificated employees on leave during the time that the 11 were hired as temporary employees. They argue that the 11 employees in question were properly hired as "temporary" teachers because of the shortage created by the 22 permanent and probationary teachers on leaves of absence (see *Paulus* v. *Board of Trustees, supra,* 64 Cal.App.3d 59, 63). The burden of proof was on appellant as petitioner in the mandate action (*Paulus* v. *Board of Trustees, supra,* at p. 63). The findings of the trial court implied that the need for the services of the 11 employees was due to the fact that fewer temporary replacements had been hired than permanent or probationary teachers on leaves of absence, and the evidence is susceptible of that interpretation (see *Paulus* v. *Board of Trustees, supra,* 64 Cal.App.3d 59). Therefore, the determination of the trial court is to be upheld.

 Appellant Campbell Elementary Teachers Association contends that the trial court abused its discretion in denying the motion to reopen the case for the purpose of reconsidering the decision and taking additional evidence, if necessary, because of the omission of four employees from the list of persons to be terminated. The four employees omitted were Peter Keeslar, Gail Foss, Joseph Moya and Jim Schnyer. The personnel files of these four employees were admitted in evidence at trial. Appellant contends that these four individuals occupied positions which the affected employees in the present case were certified and competent to render. It is appellant's contention that those whose names were omitted are junior to some of the employees involved herein and

that therefore none of the affected employees with greater seniority may be terminated.

Respondents point out that the four employees omitted from the termination list are all *permanent* employees and that, under section 13447, status as a permanent employee has significance in addition to position on the order of employment. Section 13447 of the Education Code provides in relevant part: "the services of no permanent employee may be terminated under the provisions of this section while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render."

Under section 13447, the permanent status of the four individuals omitted from the order of employment afforded those individuals employment rights senior to those employees having only probationary status. Here, all of the affected employees except two were temporary or probationary employees. Their rights would not be affected by the omission of Keeslar, Foss, Moya and Schnyer from the order of employment because none of the affected probationary or temporary employees could have "bumped" any of the four permanent employees as long as any probationary employee was being retained to render a service which the four were certificated to render.

The only affected employees having permanent status at the time of the governing board's decision were Carol Crow and Wenonah Brichetto. Carol Crow could not have "bumped" Keeslar, Foss, Moya or Schnyer because, at the time of the final notice of termination, only Crow's personnel credential had been registered with the county board of education; she had failed to properly inform the district that she possessed a teaching credential. Wenonah Brichetto possessed only a nursing credential. Thus, neither Crow nor Brichetto was prejudiced by the omission of the four from the order of employment. The trial court did not abuse its discretion in denying the motion to reopen.

Affirmed.

Caldecott, P. J., and Ragan, J.,* concurred.

Appellants' petitions for a hearing by the Supreme Court were denied March 9, 1978. Mosk, J., was of the opinion that the petitions should be granted.

---

*Assigned by the Chairperson of the Judicial Council.