[Civ. No. 59421. Second Dist., Div. One. Apr. 14, 1981.]

VIDDA D. BROUGH et al., Plaintiffs and Appellants, v.
GOVERNING BOARD OF THE EL SEGUNDO UNIFIED
SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Schwartz, Steinsapir, Dohrmann & Krepack and Jeffrey S. Wohlner for Plaintiffs and Appellants.

Paul M. Loya for Defendant and Respondent.

OPINION

HANSON (Thaxton), J.—Vidda D. Brough and 30 other certificated teachers of the El Segundo Unified School District appeal the de-

nial by the trial court of their petition for mandamus to review the decision of the Governing Board of the El Segundo Unified School District (hereinafter referred to as the Board) sustaining the accusation which validated the termination of their employment in the school district.

FACTS

On March 9, 1979, Chester R. Ingils, superintendent of the El Segundo Unified School District (hereinafter referred to as the District), recommended to the Board that a list of 35 certificated employees not be reemployed for the 1979-1980 school year and that the Board give notice to said employees that their services would not be required (Ed. Code, §§ 44949, 44955).[1] The reason given for his recommendation was that (A) the average daily attendance (hereinafter referred to as ADA)[2] in all of the schools of the District for the first six months of the 1978-1979 school year had declined below that for the corresponding periods of the previous two school years and (B) there would be a reduction in 17 designated particular kinds of services (hereinafter sometimes referred to as PKS)[3] for the 1979-1980 school year.

The superintendent's action was based on the resolution of the Board of Education of the District of February 27, 1979, determining that the ADA had declined as described; that the PKS listed[4] must be reduced

---

[1]Unless otherwise indicated, all statutory references are to the Education Code.

[2]ADA is the average number of students within a certain school district who attend school each day during the first six months in which school is in session.

[3]When a district reduces any offering in a code-mandated course, but maintains the level above the statutory minimum; or reduces or eliminates a noncode-mandated offering, that reduction is considered a reduction of a particular kind of service.

[4]The particular kinds of services and amount of reductions in the list is as follows:
"1. Administrative services by 6 positions.
"2. Applied Arts by .6 positions.
"3. Business by .6 positions.
"4. Classroom Aide Supervision by .2 positions.
"5. Curriculum Writing by .2 positions.
"6. Counseling by 1 position.
"7. English by 2.8 positions.
"8. Fine Arts by 1 position.
"9. Library services by 1 position.
"10. Life Science by .6 positions.
"11. Mathematics by 2.4 positions.
"12. Music by .6 positions.
"13. Opportunity Class by 1 position.
"14. Physical Education by 2.8 positions.
"15. Social Studies (including History, Humanities and Social Science) by 3

or discontinued; that it was in the best interests of the District that the number of certificated employees be reduced and the legal number of certificated employees of the District be terminated (§ 44955); that the reduction of certificated staff was to be effected by termination of regular employees rather than temporary and substitute employees; that graduation requirements should be modified to conform with the reduction of particular kinds of services; and that the District superintendent should initiate layoff procedures (§§ 44955, 44949).

Superintendent Ingils on March 26, 1979, filed an accusation jointly against a list of 32 permanent or probationary certificated employees of the District. He therein alleged that he had on March 13, 1979, recommended to the Board that notice be given to the listed teachers that their services would not be required for the ensuing school year giving his reasons therefor; that on March 9, 1979, he had given written notice to the listed teachers pursuant to sections 44955 and 44949; and that the teachers requested in writing a hearing to determine whether there was cause for not reemploying them for the ensuing school year. It was further alleged that the cause for this action was that the ADA had declined below the corresponding period of each of the two previous school years and that the listed particular kinds of services (PKS) were to be reduced or discontinued for the 1979-1980 school year; that for these reasons the Board found it necessary to decrease the number of certificated employees in the District; that no permanent or probationary employee with less seniority was being retained to render a service which any of the terminated teachers was certificated and competent to render; and that cause for not reemploying these teachers related solely to the welfare of the schools and pupils thereof under sections 44949 and 44955.

Following a hearing on the evidence conducted by an administrative law judge, the Board found that on March 13, 1979, it was given written notice by Superintendent Ingils of his recommendations; that ADA at all of the schools of the District for the first 6 months of the 1978-1979 school year had declined below the corresponding periods of the previous 2 school years in that in the 1976-1977 school year the ADA for the first 6 months was 2,848 while in the current 1978-1979 school the ADA was 2,482; that the percentage decline between 1976-1977 and 1978-1979 was 12.787 percent; that the number of full-

positions.
"16. Spanish by .6 positions.
"17. Work Experience by .6 positions."

time equivalent certificated staff employed during the 1976-1977 school year as of March 1, 1977, was 159 while the number of full-time certificated staff employed on March 1 of the current year was 125.5; and that the decline would permit a staff reduction of 20.3 certificated employees. The Board further found, inter alia, that positively assured attrition as of April 26, 1979, was 2; that the number of certificated employees in the District was reduced by 11.5 positions during the computation period by reason of retirements, resignations and deaths; that the number was reduced by 22 positions during the computation period by reason of layoff due to reduction in particular kinds of services which was effected by a section 44955 proceeding in the 1977-1978 school year; and that there was cause to implement the reduction of the particular kinds of services for the 1979-1980 school year as recommended by Superintendent Ingils; that pursuant to the employment list compiled by the District 35 certificated personnel were given notices in the inverse order of their employment although 1 was later withdrawn; and that these certificated employees requested in writing a hearing.

In addition the Board found that administrators Ingils, Bertain, Poidevin and teachers Lenker and Carson were skipped and are junior to some of the other certificated employees being terminated but no one established that he or she is competent and credentialed to render the services to the District now being rendered by those designated employees. The Board found no improprieties and errors made by the District in making service reductions or assignments and reassignments as alleged by the appellant teachers. Mr. Stanley Katzer was found to be a certificated employee laid off at the end of the 1977-1978 school year who was rehired as a temporary employee for the 1978-1979 school year and who did not challenge that classification.

On the basis of these findings the Board concluded that sufficient cause existed for termination of 8.8 full-time equivalent positions due to a decline in ADA; that application of the percentage decline permitted staff reduction of 20.3 to be reduced by 11.5 for attrition during the computation period; and that the allowable layoff was reduced by one because one teacher resigned; that loss of staff due to reductions in particular kinds of service (§ 44955) is not attrition which offsets allowable layoff; that the particular kinds of services to be eliminated or reduced fell within section 44955 but that the allowable layoff due to such reduction should be reduced by one due to the resignation of one teacher so there were 24 allowable layoffs on this ground. The Board found that cause was established to reduce by 31.8 the full-time equivalent posi-

tions (§§ 44949, 44955); that no teacher being terminated was certificated and competent to render services that would be rendered by junior employees who were retained and that Stanley Katzer is a temporary employee. The Board further ruled that the number of certificated personnel to receive notice should be reduced in number by the assured attrition of certificated personnel by reason of resignation, retirement or death.

Accordingly, the Board sustained the accusations served on the appellant teachers to the extent that a sufficient number of them should be notified of termination for the 1979-1980 school year, in reverse order of seniority, to reduce the certificated personnel of the District by 31.8 full-time equivalent positions less any positively assured attrition to the date of adoption by the Board of its decision; it also directed the superintendent to give final notice of termination to the designated teachers.

The appellant teachers on June 29, 1979, filed a petition for mandamus alleging that (a) the Board erred in finding that the number of full-time certificated employees could be reduced on the basis of reductions in both ADA and particular kinds of services; (b) that it applied an incorrect formula to compute the proper number of layoffs; (c) that it failed to determine the order of termination of the teachers solely on the basis of the needs of the District and the students; (d) that the evidence was not sufficient to support program cuts; (e) that the accusation was improperly amended; (f) that the District failed to make assignments and reassignments required under section 44955; (g) that Katzer should have been served with an accusation and given notice; and (h) that the decision resulted in the reduction of teaching in general in the District. They requested that the decision of the Board be set aside and that they be restored to their positions.

The trial court following review of the transcripts of the administrative hearing and oral argument on the points raised on the petition for writ of mandamus found, inter alia, as follows: that the petitioners were at the time of the administrative proceedings permanent certificated employees of the District with the exception of Sandstrom and Wilson who were probationary employees; that the Board by resolution on February 27, 1979, reduced 17 designated particular kinds of services[5] and authorized the superintendent to initiate layoff procedures; that the ADA of all schools in the District the first 6 months of the 1978-1979

---

[5]See list in footnote 4, *ante*.

school year declined by 12.787 percent compared to the ADA for the first 6 months of the 1976-1977 school year; that the number of regular certificated employees was 159 on March 1, 1977, and 125.5 on March 1, 1979; that the loss of staff during the 2-year computation period included 22 employees who were laid off at the end of the 1977-1978 school year due to reduction in particular kinds of services (§ 44909); that the District was suffering from deficit financing and was paying for some expenditures out of its reserves; that the District is a "high wealth" district under the *Serrano* decision (*Serrano v. Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187], cert. den. 432 U.S. 907 [53 L.Ed.2d 1079, 97 S.Ct. 2951]) and was anticipating further losses as a result of that decision; that in reducing services the District considered those services which would least hurt the instructional program and fit within the requirements of the Education Code; that the accusation was not amended in the administrative proceedings; that as between 2 employees hired on the same date, the District decided which employee was to be terminated on the basis of appropriate state teaching or service credentials; that Sorkin, who was terminated while elementary teachers hired on the same date were retained, obtained his elementary credential after the layoff notice was served on him; that the District made numerous assignments and reassignments of employees in an attempt to effectuate the layoff of the least senior employees; that no employee being terminated was certificated and competent to render the service being rendered by a less senior employee who was being retained; that all employees being retained held appropriate credentials for the service to which they were being assigned; that 21 sections of physical education are scheduled for the 1979-1980 school year and it is planned for all grade levels; that Stanley Katzer, a regular employee of the District until terminated in June 1978 (§ 44955), was rehired in December 1978 as a temporary employee; that the number of temporary employees during the 1978-1979 school year did not exceed the number of employees on leave of absence; that Katzer did not challenge the appropriateness of his temporary status; and that the District relied on his status as a temporary employee in sending out layoff notices to probationary and permanent employees.

On the basis of these findings the trial court concluded that the termination of all petitioners, including the probationary employees, was supported by the evidence; that the services reduced by the Board were appropriate as particular kinds of services appropriately within section 44955; that the Board's action was reasonable and not arbitrary or

capricious; that cause existed for termination of 8.8 regular employees because of a decline in ADA; that loss of staff during the computation period by reason of layoff is not attrition which must be used to offset the allowable layoff due to decline in ADA; that the District appropriately used credentials held by employees to determine which of 2 or more employees hired on the same date would be terminated; that it was not required to consider credentials of which it had no knowledge at the time of the decision as in the case of Sorkin; that the District properly made assignments and reassignments as required under section 44955; that the Board made the decision to terminate the petitioners based on the needs of the District and the students thereof; that Stanley Katzer was a temporary employee for the 1978-1979 school year and the petitioners had no standing to challenge his status at the administrative hearing to which he was not a party; and finally that the Board did not abuse its discretion in terminating petitioners.

ISSUES

Appellants contend that the evidence was insufficient to support the trial court's findings: (1) That the District utilized correct figures in calculating the number of layoffs allowable due to a reduction in ADA; (2) that the District applied the correct formula in determining the number of employees to be laid off; (3) that ADA terminations were properly effectuated on the basis of the credentials and seniority of each employee; (4) that, assignments and reassignments were properly effectuated; (5) that the reductions in PKS were reasonable; (6) that there were no amendments of the administrative accusation; (7) that the reduction of physical education positions did not constitute a reduction in teaching in general; and (8) that Stanley Katzer was a temporary employee to whom the District was not required to send a layoff notice.

DISCUSSION

I

██ Appellant teachers contend that the District incorrectly determined the total number of certificated staff in both the base and current years. The District introduced evidence showing that the number of "base" certificated staff included all certificated employees on the payroll. The evidence further demonstrated that the base certificated staff did not include certificated employees who were on leaves of

absence since they were not on the payroll, but did include temporary employees who were on the payroll. The District thereafter adjusted the number of base certificated staff by adding the number of certificated employees on leaves of absence (see *Campbell Elementary Teachers Assn., Inc.* v. *Abbott* (1978) 76 Cal.App.3d 796, 810 [143 Cal.Rptr. 281]) and subtracting the number of temporary employees thereby deriving the total number of certificated staff. The total number of certificated staff therefore represents the number of permanent and probationary certificated employees within the district. This procedure was followed in both the current and base years.

Appellants claim that the original number of "base" certificated staff already included the number of certificated employees on leaves of absence and that the District's adjustments in effect doubled that number. As we understand their argument, appellants further claim that because the temporary employees included in the "base" certificated staff were one-for-one substitutions for the employees then on leaves of absence they should have been included in the total certificated staff. They argue in effect that the District was required to adjust the "base" certificated staff only by adding the number of employees on leaves of absence with the end result that the number of total certificated staff would be greater than the figure derived by the District for each of the years in question. Appellants in making this argument depend upon the calculations and testimony of Thomas Brown, a consultant with the research and finance department of the California Teachers' Association. The appellants introduced into evidence Brown's calculations and figures claiming that this expert had properly determined the total certificated staff by this method.

The District on the other hand supported its method of computing the base certificated staff to derive the total certificated staff by introducing into evidence the calculations and figures prepared by Thelma Zeiler, an employee of the District. Thelma Zeiler further testified explaining the source of the figures she used in her calculations and the method of performing the computations, thus supporting the accuracy of these figures. The trial court on the basis of compelling logic accepted the calculations presented by the District as constituting the appropriate method of adjusting the base certificated staff. The testimony of Brown does not persuasively refute the customary practice of the District in making these calculations and the court was not bound to accept his alternative method. It is clear that the trial court's determination that the number of "base" certificated staff and the

calculations relied on by the District were correct is supported by substantial evidence in the record.

## II

■ Appellants contend that the formula the District used in determining allowable ADA layoffs was improper. Their theory is that PKS layoffs should not have been used in any manner to reduce the "normal" attrition figure.

The District introduced evidence that declines in ADA during the computation period (i.e., between the base year [1976-1977] and the current year [1978-1979]) made possible 20.2 ADA layoffs. The District further demonstrated that the total certificated staff decreased by 33.5 employees, 22 of whom were laid off because of the PKS reductions within that same computation period. By subtracting the PKS layoffs from the total decrease in certificated staff, the District determined 11.5 employees departed as a result of "normal" attrition. Thereafter this "normal" attrition was used to offset the possible ADA layoffs leaving 8.7 allowable ADA layoffs (20.2-11.5 = 8.7).

Section 44955 permits a school district to reduce its permanent and probationary employees by the same percentage as the decline in ADA within the corresponding computation period. However, "ignoring normal attrition in certificated personnel results in a reduction of force not necessarily required by decline in average daily attendance." (*Burgess v. Board of Education* (1974) 41 Cal.App.3d 571, 579 [116 Cal.Rptr. 183].) In *Burgess* the court held that normal attrition must be used to offset layoffs made possible by a decline in ADA.

The District in the case at bench clearly used "normal attrition" as an offset to ADA layoffs. It is the definition of normal attrition which constitutes the critical issue on this appeal.

The District in making its computations of normal attrition deducted the PKS layoffs from the number by which total certificated staff decreased within the computation period. Appellants, as we interpret their argument, contend that those PKS layoffs which occur within the computation period should not be used to reduce the number of certificated staff having departed the district. Stated in the affirmative, appellants appear to claim that normal attrition should include PKS layoffs as well as those occurring as a result of retirement, resignation or death.

Excluding PKS layoffs from normal attrition, as the District did in the present case, reduces the number used to offset the possible ADA layoffs. Appellants argue that this method of computation improperly increases the number of possible ADA layoffs.

*Burgess* defined normal attrition merely as "the number of certificated employees who had departed the system in the computation period." (41 Cal.App.3d 571, 579.) The court did not address the question of what evidence must be considered by a school district. It has since been held that in determining the number of allowable layoffs, "the board must consider positively assured attrition, such as already occurred in the computation period and mandatory retirements."[6] (*Lewin* v. *Board of Trustees* (1976) 62 Cal.App.3d 977, 982 [133 Cal.Rptr. 385].)

Clearly "normal" or "positively assured" attrition includes retirements, resignations and deaths, but layoffs attributable to PKS reductions do not fall within the same category. The layoffs attributable to a decline in ADA and those prompted by a reduction in PKS are distinct, not to be commingled, even though provisions for effectuating both are delineated in section 44955. *Burgess*, the cornerstone upon which the line of cases defining normal attrition is built, involved only layoffs based on a decline in ADA. Appellants' reliance on *Lewin*, which followed *Burgess*, as support for the proposition that PKS layoffs offset allowable ADA layoffs is misplaced. (See generally Ozsogomonyan, *Teacher Layoffs in California: An Update* (1979) 30 Hastings L.J. 1727.)

To require the District to use PKS layoffs to offset allowable ADA layoffs would lead to incongruous results. Section 44955 provides that ADA layoffs shall not be proportionately greater than the actual decline in student enrollment during the computation period. By contrast, the only limitations on PKS layoffs are that they be necessary and that they not be governed by any statistical computation. Logically the plain terms of section 44955 relating to the positively assured or "normal" attrition during the computation period do not include PKS layoffs. ADA could conceivably increase while the District, subject to section 44955, effectuated the necessary PKS layoffs. The statutory terms do not imply that the layoffs from one shall be used to offset layoffs from the

---

[6]Assured attrition no longer includes mandatory retirements in light of section 23922 granting to teacher the right to continued employment contingent upon certification of competency.

other. "Moreover, the economic salvation resulting from the use of the discretionary power to reduce services will be cancelled if teachers laid off for reduction in services must be counted as attrition in the following year's ADA calculations." (Ozsogomonyan, *Teacher Layoffs in California: An Update, supra*, 30 Hastings L.J. 1727, 1735.)

Finally, the employees laid off because of PKS reductions do not meet the criteria of having departed the system within the computation period. Such employees have a preferred right to reemployment (§ 44956) or, alternatively, their absence is not considered a break in continuity of service (§ 44958). PKS layoffs cannot be considered positively assured attrition in the same manner as departures resulting from retirements, resignations or deaths.

For these reasons, the trial court correctly determined that PKS layoffs do not affect ADA layoffs within the computation period and that the District properly deleted PKS layoffs in determining normal attrition.

### III

The appellants claim that even if the layoffs relating to ADA declines were correctly calculated, they were improperly effectuated. Specifically, appellants argue that the District failed to follow section 44955 by retaining employees less senior than those terminated, and with respect to employee Sorkin, by deciding which, among those hired on the same day, would be laid off.

Section 44955 provides in pertinent part that "the services of no permanent employee may be terminated under the provisions of this section while any probationary, or any other employee with less seniority, is retained *to render a service which said permanent employee is certificated and competent to render.* As between employees who first rendered paid service to the district on the same date, the governing board shall determine the order of termination solely on the basis of needs of the district and the students thereof." (Italics added.)

"The only reasonable construction to be given the [above portion of § 44955] is that whenever reduction in staff is necessitated by lower ADA or by reduction or discontinuation of a service, where competency is not demonstrated by a senior employee, a junior employee having the ability to serve the needs of a program may be retained by the school

district even though it may result that the senior employee lacking competence must be terminated." (*Moreland Teachers Assn.* v. *Kurze* (1980) 109 Cal.App.3d 648, 655 [167 Cal.Rptr. 343].)

■ The contentions made by appellants in *Moreland* mirror those made by the teachers in the case at bench. Senior employees had been terminated while those junior, but possessing special skills or competency, had been retained. The court, relying on the language in section 44955, upheld the "skipping" procedure. The trial court in the case at bench found that those junior employees retained possessed certain skills or credentials not held by the senior employees terminated. Further, as in *Moreland*, administrators may be retained in the same manner as any other employee under section 44955. (109 Cal.App.3d at p. 655.) The trial court's findings are supported by evidence that the junior employees retained held skills lacking in the senior employees terminated.

■ The 1977 amendment to section 44955 requires that termination of employees with the same date of initial service be decided "solely on the basis of needs of the district and the students thereof." Fred Sorkin began his service on the same date as five other employees, but he alone was terminated.

Sorkin's termination did not constitute arbitrary action by the District. On the final date on which notices must be sent, the District's records indicated that the other employees possessed elementary teaching credentials while Sorkin did not. After the layoff notices were issued, Sorkin obtained an elementary credential. However, the District properly considered the credentials of employees as these existed at the final date on which to issue layoff notices. This was appropriate and the certificate subsequently acquired was irrelevant to its decision. (*Degener* v. *Governing Board* (1977) 67 Cal.App.3d 689, 698 [136 Cal.Rptr. 801]; *Campbell Elementary Teachers Assn., Inc.* v. *Abbott, supra,* 76 Cal.App.3d 796, 815.) Substantial evidence in the record supports the District's retention of less senior credentialed elementary teachers as being based on the needs of the district and the students pursuant to section 44955.

## IV

Appellants contend that the District's assignments and reassignments were improper pursuant to section 44955. Appellants make three specif-

ic claims within this contention: (a) That certain teachers who possessed kindergarten credentials were not upon the resignation of Anna Howe reassigned to her position as a kindergarten teacher; (b) that the District reassigned its only certificated librarian, Rosenberg, to a classroom position "bumping" appellant Lucas and leaving no certificated librarian on duty in violation of California Administrative Code, title 5, section 16043; and (c) that the District reassigned various teachers to positions involving subjects outside their competency, thereby "bumping" other less senior teachers who allegedly possessed such competency.

The District introduced into evidence several exhibits illustrating its assignment and reassignment procedures. The evidence demonstrated that the District, as the trial court found, reduced by one the number of ADA layoffs as a result of Howe's resignation, and this position the District properly filled.

■ With respect to their next argument, appellants misconstrue California Administrative Code, title 5, section 16043, as supporting their proposition that a certificated "librarian" must be on duty to supervise classified personnel and pupils. Appellants rely on the portion of section 16043 which reads "classified personnel assigned school library duties are to be under the supervision of certificated personnel; ..."

The term "certificated personnel" under the terms of this statute does not necessarily connote certificated librarians as appellants suggest. Nowhere within section 16043 is "certificated personnel" defined as a certificated librarian. The clear language of the section refers to any and all certificated personnel. The trial court determined that the certificated librarian, Rosenberg, was properly reassigned to a classroom position; her vacancy was filled by a certificated teacher with supervisory capabilities. (Cal. Admin. Code, tit. 5, § 16043.)

Finally, appellants argue that some of the reassigned teachers whose employment was continued lacked competence to fill the positions of those appellants who were "bumped." Section 44955 in pertinent part provides that "the board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render." The District introduced into evidence the seniority lists and credential qualifications of the reassigned employees.

The trial court independently determined that the District considered seniority and qualifications in making reassignments in accordance with section 44955 and this determination is supported by the evidence.

## V

Appellants next contend that the evidence does not support the reductions in particular kinds of services. Appellants further argue that seniority was used in determining where programs were to be cut; that the District cut services because of a decline in ADA; that the District was "arbitrary, capricious, unfair and improper" in reducing services; that administrative positions were reduced based on speculative school closures without a board resolution; that the District should have effectuated ADA layoffs prior to reducing services; and that the District reduced teaching in general at Richmond School. These arguments are refuted by the convincing evidence presented by the District which covered each of these issues.

The District introduced into evidence a board resolution dated February 25, 1979, which delineated the services to be reduced and the number of layoffs necessary, and it provided as an exhibit a chart tracing the layoffs to the services reduced. Further evidence demonstrated how the District considered its available resources and needs; the effect of the recent *Serrano-Priest* decision (*Serrano* v. *Priest, supra*, 5 Cal. 3d 584); the fact that the District was engaged in deficit financing; and that the programs cut were those least likely to hurt the District while complying with the Education Code.

A reduction in services may not be based on fraudulent, arbitrary or capricious action of the District. (*Campbell Elementary Teachers Assn., Inc.* v. *Abbott, supra*, 76 Cal.App.3d 796, 808.) The record, however, is replete with evidence to support the finding of the trial court that the District in the case at bench acted reasonably and appellants point to no evidence to support their claim that there was anything capricious in its approach to the teacher layoffs.

## VI

Appellants further contend that the trial court erred in determining that the District had not amended the administrative accusation. Appellants argue that the procedure of the District, in "skipping" employees

who had previously been notified of termination rather than withdrawing the accusation as to them or terminating them, constituted making an amendment of the accusation. Appellants' claim that an amendment of the accusation in this manner after March 15, 1979, is prohibited. (*Karbach* v. *Board of Education* (1974) 39 Cal.App.3d 355 [114 Cal. Rptr. 84].) Appellants' reliance on the *Karbach* decision in support of this contention is misplaced. *Karbach* held only that an amendment adding, after the March 15 deadline, other reasons for termination not appearing on the original notices was invalid. The evidence shows that the District did not add other reasons for termination after the deadline.

## VII

Appellants challenge the trial court's finding that the reduction in physical education positions did not constitute a reduction of teaching in general. This constitutes, again, a claim that the evidence was insufficient. It is the function of the trial court to weigh the evidence and reconcile conflicts therein. The court found on the basis of the testimony that 21 sections of physical education would be planned for the 1979-1980 school year and that physical education is planned for all grade levels. The fact that the teachers laid off were principally those at the junior high level does not establish that physical education will not be offered at that level since the District may assign other teachers to that service. It has been established that layoffs of physical education teachers fall within a reduction of particular kinds of service. (*Degener* v. *Governing Board, supra*, 67 Cal.App.3d 689.)

## VIII

Appellant teachers finally contend that Katzer, who had acquired tenure when he was laid off in June 1978, was a permanent rather than a temporary employee after he was reemployed in December 1978 to replace one of the physical education teachers for the balance of the school year. Appellants claim that since he was really a permanent employee he should have been given notice under section 44955 with the result that all employees senior to him would have to be retained. It is argued that Katzer never performed the duties of the teacher for whom he substituted and subsequently in February 1979 he switched places with a high school physical education teacher who then returned to teach junior high. Therefore, appellants argue, he was really employed to fill the vacancy left by another junior high teacher and then at the

new semester he took a vacancy at the high school level. However, the District is not required to match specifically a temporary employee to a person on leave of absence. (*Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59 [134 Cal.Rptr. 220].)

Katzer did not receive notice because he was considered by the District to be a temporary employee whose contract terminates at the end of the 1978-1979 school year. Katzer is not a party to the case at bench. Katzer did not claim to be a permanent employee; the contract he executed indicates he was a temporary employee; and he testified that he had made no challenge of any kind to his status as temporary employee. ▮ Once the initial temporary status of a teacher is determined, then subsequent status for that year remains temporary and the classification of the status by employment contract prevails. (*Rutley* v. *Belmont Elementary Sch. Dist.* (1973) 31 Cal.App.3d 702 [107 Cal. Rptr. 671].) The court on substantial evidence in the record found that he was a temporary employee to whom the District was not required to send notice.

## DISPOSITION

The judgment of the trial court denying the petition for writ of mandamus is affirmed.

Lillie, Acting P. J., and Hogan, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.