Filed 4/16/13  Yosemite Faculty Assn. v. Yosemite Community College Dist. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| YOSEMITE FACULTY ASSOCIATION et al., Plaintiffs and Respondents, v. YOSEMITE COMMUNITY COLLEGE DISTRICT et al., Defendants and Appellants. | F065365 (Super. Ct. No. 667978) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

Johnson Schachter & Lewis, Kellie M. Murphy, Kathryn L. Patterson; Gordon & Rees and Don Willenburg for Defendants and Appellants.

Law Offices of Robert J. Bezemek, Robert J. Bezemek, Patricia Lim, David Conway; and Myron Moskovitz for Plaintiffs and Respondents.

-ooOoo-

This case arises out of cuts necessitated by decreased funding for the Yosemite Community College District (the District), which encompasses Modesto Junior College (MJC) and Columbia College. The governing board of the District concluded that elimination of numerous teaching positions was needed to reach budgetary goals. The board achieved this goal by, in the words of the relevant statutes, reductions in particular kinds of services. In other words, programs and classes were eliminated, thus reducing the number of tenured teachers.

The Yosemite Faculty Association (the Association), on behalf of the teachers who were terminated,[1] challenged the District's actions. An administrative hearing was held, and the administrative law judge essentially affirmed the terminations. The Association filed a petition for a writ of mandate in the trial court seeking reinstatement for three of the tenured teachers, Jon Kropp, Haleh Niazmand, and Brian Greene (hereafter collectively Teachers). After hearing, the trial court ruled Teachers had to be reinstated and reimbursed for all lost benefits. The District filed this appeal.

Throughout these proceedings, Teachers have not challenged the District's right to terminate positions. The issue always has been the right of the teacher who taught the classes that were eliminated to transfer into other positions that were not eliminated.

Education Code section 87743[2] provides, in essence, that when positions are eliminated in a situation such as this, the teacher whose position has been eliminated has the right to transfer into another position that has not been eliminated if (1) he or she is qualified to teach the subject, and (2) the position is held by a teacher with less seniority. The parties refer to this right as "bumping rights."

---

[1]We use the term "terminated" to refer to the individuals who lost their positions as a result of the cutbacks. The parties refer to the loss of jobs as layoffs. By referring to the loss of jobs as terminations, we are not implying these individuals lost their jobs for any reason other than the loss of funding.

[2]All statutory references are to the Education Code unless otherwise stated.

2.

Kropp and Niazmand convinced the trial court they were qualified to teach different subjects, and thus had the right to transfer to a different position. We conclude there was substantial evidence to support the trial court's conclusion that Kropp was qualified to teach the subject into which he wished to transfer, but there was no credible evidence that Niazmand was qualified to teach the subject into which she wished to transfer. Accordingly, we will affirm the judgment as to Kropp, but will reverse the judgment as to Niazmand.

Greene is in a different position. He convinced the trial court he had the right to transfer into a vacant position that the District had decided to eliminate. The basis for the trial court's ruling was that the District made the decision to eliminate the vacant position after it had provided Greene his notice of termination pursuant to section 87740. Section 87740, subdivision (a) provides that no later than March 15, the District must provide an employee with written notice that his or her services will not be required for the following school year. This notice, which we refer to as the statutory notice, must state all reasons why the employee will not be reemployed. The failure to provide the statutory notice requires the District to reemploy the teacher. (§ 87743.) The failure to state the reason for the employee's termination in the statutory notice also requires the District to reemploy the teacher. (§ 87740; *Karbach v. Board of Education* (1974) 39 Cal.App.3d 355, 362 (*Karbach*).)

The notice provided to Greene stated he would not be reemployed because his position had been eliminated. Greene convinced the trial court that he was terminated because the District decided to eliminate the vacant position into which he wished to transfer. The District argues its notice was correct and that the trial court erred.

We conclude the trial court confused two distinct statutes and thus reached the wrong conclusion. The statutory notice provisions are found in section 87740. This section does not address the right to displace an employee with less seniority by transferring to another position. This right is found in section 87743, which does not

3.

grant any right to notice that a position may be eliminated.  This section provides a teacher only with the right to transfer into an existing position.  If the position is eliminated, no matter when, the right to transfer does not exist.  Accordingly, we will reverse the judgment as to Greene.

## FACTUAL AND PROCEDURAL SUMMARY

**The Administrative Proceedings**

Pursuant to governing statutes and regulations, Teachers designated to lose their positions requested a hearing before an administrative law judge to challenge the District's decision to terminate their employment.  (§ 87740, subd. (b).)

### *The Testimony*

#### **Karen Walters Dunlap**

The relevant testimony at the administrative hearing began with Karen Walters Dunlap, the vice-president of instruction at MJC.  She explained that minimum qualifications to teach are the requirements an individual must possess before he or she can teach a discipline at a California community college.  Disciplines and minimum qualifications are adopted by the board of governors for the community college system. MJC is required to use the list of disciplines and the minimum qualifications when employing faculty.

The community college system has two general types of disciplines -- academic and vocational.  For academic disciplines, the minimum qualifications are a master's or bachelor's degree in the discipline and a related master's degree.

For vocational disciplines, the minimum qualifications are a bachelor's degree and two years of work experience related to the discipline.[3]  California Code of Regulations,

---

[3]Although not relevant in this case, minimum qualification in a vocation discipline also can be obtained with an associate degree and six years of work experience in a related field.

4.

title 5, section 53404 states that occupational experience does not include teaching experience.

When a candidate wishes to teach but does not meet the minimum qualification criteria, he or she may attempt to establish equivalent qualifications. The District's policy on equivalency is primarily established by the faculty, but the governing board must approve or reject an application for equivalency qualification. A candidate seeking equivalency qualification in an academic discipline must provide conclusive evidence that he or she has the educational equivalent to a master's degree. For academic subjects, work experience, including teaching experience, is not a substitute for upper division course work when attempting to obtain an equivalency. Similar standards exist for establishing equivalency in vocational disciplines.

When a faculty member submits an application for equivalency at MJC, a prescreening committee of three faculty members in the discipline reviews the application to determine whether the faculty member meets the equivalency criteria for the discipline. If the prescreening committee determines the faculty member meets the equivalency criteria for the discipline, the application is forwarded to the Academic Senate Equivalency Committee. The prescreening committee must explain to the academic senate why they concluded the faculty member met the equivalency criteria.

If the prescreening committee concludes the faculty member does not meet the equivalency criteria, the faculty member does not have any appeal rights.

The Academic Senate Equivalency Committee evaluates the information provided by the prescreening committee. This committee may interview the members of the prescreening committee and it has the right to approve or disapprove the application.

The same procedure is used for faculty members who seek to obtain minimum qualifications to teach in a new area.

Dunlap also explained that a class listed under two disciplines is known as a cross-listed class. The instructor for a cross-listed class only needs to be qualified in one of the disciplines.

Finally, Dunlap explained the concept of a single course equivalency. This is a practice whereby colleges employ a faculty member to teach a single course in a discipline, even though the faculty member does not meet the minimum qualifications to teach all of the courses in that discipline.

When Dunlap was hired in 2007, she prohibited any faculty member from teaching under a single-course equivalency. If a faculty member teaches in a discipline, he or she must have the minimum qualifications to teach in that discipline. This policy was compelled by a legal opinion prepared specifically to discuss the use of single course equivalencies.

**James Howen**

Kropp, who had been teaching industrial technology at MJC for a number of years, sought to establish that he met the minimum qualifications to teach in a closely related field, electronic technology. Howen, a professor of electronic technology, along with Adrian De Angelis and Tim Vaughan, served on the prescreening committee for Jon Kropp's application.

The minimum qualifications for electronic technology are a bachelor's degree and two years of relevant professional experience. Relevant professional experience required an applicant to have experience in computer repair, microprocessor design and programming, industrial instrumentation, programmable logic controls, digital electronics, and basic electricity.

6.

Kropp's application was lacking in experience in these fields.[4] His application stated he had seasonal summer employment with FMC-EPO in San Jose and ESM International in Modesto. There was no evidence in the job application about what type of duties Kropp performed for ESM International. The job description provided for Satake, the successor to ESM International, suggested experience with only one type of equipment, and there was no evidence of how much electronic experience the position involved. This experience was described by Howen as very limited and not enough to teach the topics in electronic technology.

### Brian Lomax

Brian Lomax taught in the electronic technology department before he retired. He served on the committee that hired Kropp. The committee was looking for someone qualified in industrial technology and who had an electronic background. The committee felt Kropp had experience that was relevant to electronic technology and concluded he met the minimum qualifications in both disciplines.

### LeRoy Holmes

LeRoy Holmes is an instructor for MJC and chairman of the engineering, math and physical science divisions of the college. He also is an electronics instructor. He, along with Lomax and Mark Bender, were on the committee that hired Kropp.

Holmes testified that electronic technology and industrial technology were very closely related, and many of the courses were cross-listed in both disciplines. When the committee hired Kropp, it was looking for someone who could teach both industrial technology and electronic technology.

Kropp was hired to teach one electronic technology class, as well as industrial technology classes, and classes cross-listed in both industrial and electronic technologies.

---

[4]It was undisputed that Kropp had a bachelor's degree, so this portion of the requirement was not at issue.

Kropp met the minimum qualifications to teach both electronic technology and industrial technology courses.

On cross-examination, Holmes confirmed that Kropp applied for, and was hired, to be an instructor of industrial technology, not the position of instructor of electronic technology. The committee evaluated Kropp's professional experience to determine if it met the requirements of industrial technology, not electronic technology.

### Haleh Niazmand

Niazmand testified about her professional experience before beginning work at MJC. The parties stipulated she had a bachelor's and master's degree in fine arts. No evidence was presented to suggest Niazmand ever attempted to establish she had the minimum qualifications to teach in graphic arts or computer graphics, which require a bachelor's degree and two years of relevant work experience.

### Robert Stevenson

Robert Stevenson is an art professor at MJC. He taught with another professor a few sections of beginning computer graphics, although he had limited computer graphics experience.

### Brian Greene

Greene has a master's degree in library and information science and was the librarian at Columbia College. When his position was eliminated, he asserted the right to transfer into the academic achievement coordinator position. He was informed by Dennis Gervin, the vice-president of Columbia College, that the District would be changing the academic achievement coordinator position to an English teaching position. The purpose was to provide the school flexibility in the future so that if the position were eliminated, it could revert to an English teaching position. The essence of the change was to have an English instructor performing the duties of the academic achievement coordinator.

*The Argument*

Teachers asserted they had the statutory right to transfer to other positions in which teachers with less seniority had been retained. The District argued Kropp and Niazmand did not meet the minimum qualifications to transfer into these positions, and the position into which Greene sought to transfer had been eliminated.

*The Administrative Law Judge's Decision*

The administrative law judge considered each of the employees challenging the District's decision individually.

**Brian Greene**

The administrative law judge noted Greene found himself in a unique position. Greene's position as the librarian at Columbia College had been eliminated. Greene, however, was qualified to transfer into the position of academic achievement coordinator, which was vacated when the District transferred the person in that position (Craig Johnston) into a vacant teaching position in the English department.

The District did not dispute Greene was qualified to assume the academic achievement coordinator position, but it asserted Greene could not assume that position because it had been eliminated. The administrative law judge did not dispute the District's right to terminate the academic achievement coordinator position, but noted the District made this decision after it had determined that various faculty would have to be terminated. Since the elimination of the academic achievement coordinator position would be the equivalent to eliminating one faculty position, the administrative law judge directed the District to reconsider whether it could retain one of the appealing faculty members since it had eliminated the academic achievement coordinator position.

**Jon Kropp**

Kropp's position as an instructor in the industrial technology program was eliminated. He argued he met the minimum qualifications to instruct in the electronic technology program. His assertion was based on two arguments. First, he asserted he

met the minimum qualifications to teach in the electronic technology program when he was hired, and he was hired to teach in both programs. He presented the testimony of two members of the committee that hired him who supported this assertion.

Second, he sought to establish he met the minimum qualifications to teach in the electronic technology program. To meet the minimum qualifications for that program, he was required to establish he had a bachelor's degree and two years of relevant professional experience. The faculty prescreening committee that evaluated his application concluded he did not have the necessary professional experience. Kropp attacked this conclusion by pointing out that two of the members of the prescreening committee had less seniority than he, and if they found he had the necessary qualifications, one of the two would lose his job. Kropp also pointed out that he taught many courses that were cross-listed in both industrial technology and electronic technology, thereby establishing his qualification to teach in the program. Finally, Kropp also had taught a class in the electronic technology program in the past.

The administrative law judge concluded Kropp had failed to establish he met the minimum qualifications to teach in the electronic technology program. The evidence of his prior work experience was significantly outdated and unreliable. Moreover, the administrative law judge noted that it was best left to the teaching professionals to determine whether someone met the minimum qualifications to teach in a discipline.

### Haleh Niazmand

Niazmand is an art instructor with bachelor's and master's degrees in fine art. She was teaching art classes when her position was eliminated. Although she never attempted to determine whether she met the minimum qualifications to teach computer graphics classes, she asserted she should be allowed to teach in the computer graphics program.

The minimum qualifications for the program are a bachelor's degree and two years of relevant professional experience. Niazmand had the requisite degree. The issue was whether she had the relevant professional experience.

Niazmand relied on her experience working in graphic design. The relevant information in her personnel file indicated that her responsibilities included work on "computer generated images for various clients."

The administrative law judge found this reference "insufficient to satisfy the two-year experience requirement to teach in the Computer Graphics program." He noted her admission that she had limited knowledge of relevant software applications and that she could not "teach animation and the rest of them," and her failure to apply to determine if she met the minimum qualifications to teach in the program.

**The Trial Court Proceedings**

Teachers filed a petition for a writ of mandate seeking an order compelling the District to reinstate them and compensate them for lost pay and benefits. The District answered the petition and objected to portions of the record submitted by Teachers.

After a hearing on the petition, the trial court issued a statement of decision granting Teachers the requested relief.

### Jon Kropp

The trial court concluded Kropp met minimum qualifications in the electronic technology program when he was hired in 2000. The administrative law judge concluded that once an instructor was found to have met the minimum qualifications in a discipline, he remained qualified to teach in that discipline for the duration of his employment. Since the District accepted that conclusion when it adopted the administrative law judge's decision, the trial court concluded Kropp remained qualified to teach in the electronic technology program and that the District erred when it terminated his employment rather than one of the other instructors in the discipline who had less seniority than Kropp.

### Haleh Niazmand

The trial court concluded Niazmand met the minimum qualifications to teach graphic arts based on her degree and work experience. The trial court then concluded that one possessing the minimum qualifications to teach graphic art or art also possessed

11.

the minimum qualifications to teach computer graphics. The trial court recognized that to teach computer graphics, one needed a bachelor's degree and two years of relevant professional experience. It then focused on the District's decision to retain another instructor, Alan Layne, who met minimum qualifications to teach graphic arts, to teach computer graphics. According to the trial court, this was evidence the District had a practice of assigning instructors who were qualified to teach graphic arts to teach computer graphics.

The only evidence related to Niazmand's professional experience cited by the trial court, or contained in the record, was four years of part-time work for a graphic design company. According to the letter confirming Niazmand's employment, she was responsible for "fabrication and production of finished products for printing and graphic design" and "creative counseling, project presentation, … and computer generated images for various clients." The part-time work equated to two years of full-time work. The trial court described this employment as being employed as a graphic designer.

### Brian Greene

The trial court concluded the District's failure to eliminate the academic achievement coordinator position before the March 15 deadline for providing the statutory notice of layoffs violated sections 87740 and 87743. The trial court concluded Greene was terminated because the academic achievement coordinator position had been eliminated and not because his librarian position had been eliminated. According to the trial court, this resulted in Greene being terminated for a reason not specified in the statutory notice.

The trial court thus granted Teachers' petition and ordered a writ of mandate issue directing the District to reemploy Teachers and reimburse them for lost benefits.

# DISCUSSION

## Standard of Review

"[T]he trial court was required here to apply the independent judgment test in reviewing the factual determinations of the District (through its adoption of the [Administrative Law Judge's] proposed decision) in terminating [Teachers]. [Citation.] [¶] Since the trial court was required to exercise its independent judgment on the evidence, we in turn review the findings of the trial court to determine whether they are supported by substantial evidence on the whole record. If they are, the trial court's judgment must be upheld on appeal. [Citations.]" (*Bledsoe v. Biggs Unified School Dist.* (2008) 170 Cal.App.4th 127, 134, fn. omitted.) We review the trial court's rulings, not its reasoning. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

On the other hand, "'It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law … which is subject to de novo review on appeal ….' [Citation.]" (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 667.) As we shall explain, both standards of review will be necessary to resolve the issues in this appeal.

## Analysis

Despite the lengthy briefing, the issues in this case are straightforward. For Kropp and Niazmand, the issue is whether the trial court's decision was supported by substantial evidence. For Greene, the issue is whether the sequence of events violated any statute. We will discuss each teacher individually, as did the parties and the trial court.

### *Jon Kropp*

The primary basis for the trial court's ruling was that Kropp met the minimum qualifications to teach in both industrial technology and electronic technology when he was hired, and did so throughout his career. The minimum qualifications for the position

were a bachelor's degree and two years of relevant professional experience. Kropp has a bachelor's degree, so the issue is whether he had the requisite professional experience.

The District relied on the testimony of Howen, a professor in electronic technology, who served on the prescreening committee that considered Kropp's application to teach in electronic technology shortly before the layoffs occurred. The committee reviewed Kropp's application and concluded his professional experience was inadequate to teach electronic technology. Accordingly, the committee concluded Kropp did not meet the required minimum qualifications.

Kropp presented evidence from two members of the committee that hired him in 2000, Holmes and Lomax. Both testified Kropp was hired to teach industrial technology, but when he was hired he met the minimum qualifications to teach in both industrial technology and electronic technology.

The District asks us to review this issue de novo. It points out, correctly, that when the facts are not in dispute, the application of the law to those facts is reviewed de novo. The District's error is in asserting the facts are not in dispute. Indeed, this issue is purely a factual dispute, i.e., whether Kropp met the minimum qualifications to teach electronic technology. Accordingly, our review is limited to determining whether the trial court's conclusion was supported by substantial evidence.

Evidence is substantial if it is reasonable, credible, and of solid value. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) We review the entire record in the light most favorable to the judgment. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The testimony of Holmes and Lomax provided substantial evidence to support the judgment. Since they were on the committee that recommended the District hire Kropp, and the District hired Kropp, their opinions clearly were relevant. Why would the District charge faculty members to find a teacher if they were unqualified to examine the candidate's qualifications? The obvious answer is the District would not do so.

14.

Both testified Kropp was hired to teach classes in both industrial technology and electronic technology, and that he met the minimum qualifications to do so. This evidence is reasonable, credible, and of solid value. Since he met the minimum qualifications to teach electronic technology when he was hired, he retained that qualification when he was terminated. Accordingly, we conclude there was substantial evidence to support the trial court's conclusion that Kropp met the minimum qualifications to teach electronic technology and that the District erred when it retained others with less seniority to teach in the program.

### Haleh Niazmand

Similar to Kropp, we must determine whether substantial evidence supported the trial court's conclusion that Niazmand possessed the minimum qualifications to teach computer graphics. The parties agree that the minimum qualifications to teach computer graphics are a bachelor's degree and two years of relevant professional experience.

Niazmand was teaching in the art department when the decision was made to eliminate her position. She possesses a bachelor's degree and a master's degree in fine arts. Niazmand's degrees met the education requirement. The issue is whether she had two years of relevant professional experience.

The District again asserts our review is de novo. Similar to Kropp, the issue here is entirely factual and we review the entire record to determine if substantial evidence supports the judgment.

The evidence addressing this issue was scant. From Niazmand's testimony and the documents submitted at the hearing, it appears only one of her prior work experiences potentially could meet the minimum qualification requirements. She explained her position at this job as a creative consultant requiring her to oversee projects, and "[make] suggestions in terms of how the project communicates." She also participated in "fabrication and production of finished products for printing and graphic design, print by client consultation. Just a whole range of experiences that a creative design studio has

15.

with the appropriate clients." She also explained the various types of software used by the design firm, but never explained what experience, if any, she had working with that software.[5]

Indeed, a document was submitted suggesting she was unfamiliar with the relevant software. An e-mail authored by Niazmand indicated her experience when hired by the District and discussed possible positions for which she was qualified. Niazmand admitted, "As far as teaching all the software courses, I cannot teach animation and the rest of them, I will do if I have to, although I personally prefer to work out a settlement of sort and leave."

The information from Niazmand's personnel records that is contained in the administrative record similarly is unhelpful. The reference letter from True Identity, Inc., the "graphic design" firm for whom Niazmand worked, indicated that while she worked for approximately four and one-half years on a part-time basis, her job duties were "creative consulting, project presentation, creative team meetings as well as creation of hand fabricated signs and computer generated images for various clients."

The record also contains a document apparently created by Niazmand titled "Computer Graphics and Design Experience." In this document, Niazmand states that her responsibilities while employed at True Identity, Inc. "included designing as well as working collaboratively with the design team in creation of various marketing material for commercial clients. I worked in many capacities such as prospecting, ideation, computer design and production as well as print-buy."

---

[5]Her testimony on this subject was "At the time because of some of the requirements for software has changed, we were using QuarkXpress. Later on during the last year we started using InDesign software for publishing print materials and incorporating images for creation of illustrations. And for a lot of our other capabilities, brochure and other materials, we used Illustrator and Photoshop extensively."

This document also states that for the time period of 2005-2010, Niazmand produced numerous marketing materials, "including print announcements, posters[,] as well as e-announcements" for MJC's art gallery.

This is all the evidence in support of the trial court's conclusion that Niazmand had two years of relevant professional experience to teach computer graphics.

The next question is what type of experience would be relevant to teaching computer graphics. Similar to Niazmand's experience, the evidence is sparse. Among the numerous pages of exhibits is a 2005-2006 job announcement for the position of instructor of computer graphics. Job duties are described as teaching "a selection from the following sample topics: image manipulation; illustration; multimedia; web development; 2D/3D animation; gaming graphics; digital video; digital photography; introduction to computer graphics."

Also among the exhibits is a portion of the District's handbook explaining what classes and electives a student must choose to obtain either a certificate of achievement or an associate of science degree in computer graphics. The classes a student may take or are required to take include applied computer graphics (CMPGR 213), introduction to computer graphics (CMPGR 202), business presentation graphics (CMPGR 215), computer illustration software (CMPGR 217), computer graphics portfolio review (CMPGR 219), 3D modeling and animation (CMPGR 225), beginning photoshop (CMPGR 235), Internet literacy (CMPGR 263), publishing on the World Wide Web (CMPGR 264), desktop video animation (CMPGR 284), advanced photoshop (CMPGR 236), desktop publishing for computer graphics (CMPGR 252), multimedia on the World Wide Web (CMPGR 265), Dreamweaver in Web site design (CMPGR 267), and Flash: Web graphics and animation 1 and 2 (CMPGR 268 and 269).

Finally, the exhibits contain a document titled "List of Software Used in Computer Graphics Classes and Courses Where Used." The document identifies the primary software used in computer graphic classes as Illustrator, Photoshop, In Design, Bryce,

17.

Painter, PowerPoint, Maya, Dreamweaver, Flash, After Effects, Premiere, and HTML coding.

We must determine whether Niazmand provided reasonable, credible, and solid evidence that she possessed two years of professional experience relevant to computer graphics. We conclude the record affirmatively establishes Niazmand did not have the necessary professional experience. There is no evidence Niazmand had any experience working with the software taught in the computer graphics major. There is no evidence Niazmand had any experience in many of the subjects taught in the computer graphics classes. Niazmand admitted she could not teach some of the classes. Finally, there was no attempt to explain why Niazmand's actual experience would or could apply to the classes taught in the computer graphics major.

There simply is not any reasonable, solid, or credible evidence that Niazmand met the minimum qualifications to teach in the computer graphics program, or the graphic arts program for that matter. The lack of substantial evidence to support the trial court's findings requires the judgment be reversed as to Niazmand.

### Brian Greene

Greene is in a different position than the other two instructors. His position as a librarian was eliminated, resulting in his receipt of a notice of termination. Greene contends he was entitled to move into the academic achievement coordinator position instead of being terminated.

The District concedes Greene met the minimum qualifications to move into the academic achievement coordinator position. The District, however, refused to permit Greene to transfer into this position because the position was eliminated. The issue is very narrow and, because the facts are not in dispute, presents a question of law.

The academic achievement coordinator position was filled by another instructor when the statutory notices of termination were sent to the various teachers. Greene had more seniority than this instructor. After the statutory notices were sent, however, the

18.

instructor in the academic achievement coordinator position was transferred to an open position in the English department, for which he also was qualified. Once the decision to make this transfer was made, the District decided to eliminate the academic achievement coordinator position.

Greene's argument is that because the position existed at the time he received his termination notice, the District could not prevent him from transferring into the position. To do so, Greene argues, caused him to be terminated for a reason not specified in the statutory notice. The District contends it had the absolute right to eliminate an unfilled position at any time.

The authority cited by the trial court, and by Greene, for the conclusion that the District acted improperly when it eliminated the position after the statutory notices were sent consists of sections 87740 and 87743.3, *Brough v. Governing Board* (1981) 118 Cal.App.3d 702 (*Brough*), and *Karbach, supra,* 39 Cal.App.3d 355.

Section 87740, subdivision (a) requires the superintendent of the district to provide written notice to the governing board and the instructor informing both that it is recommended the instructor not be reemployed for the following school year. The notice must be given by March 15, and it must state the reasons why the superintendent recommends the instructor not be reemployed. (*Ibid.*) The employee is given the right to request a hearing on the decision not to reemploy him (*id.*, subd. (b)), and the hearing must be conducted before an administrative law judge "in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code" (*id.,* subd. (c)).

Section 87743.3 provides that a faculty member must qualify for one or more faculty service areas at the time of initial employment and is eligible for qualification in any faculty service area in which the faculty member meets the minimum qualifications and district competency standards. After initial employment, a faculty member may

19.

apply to add faculty service areas for which the faculty member is qualified. It is unclear what relevance this section has to the issue before us.

*Karbach* is the primary authority for the trial court's ruling. In the termination notices sent to numerous teachers by the statutory deadline, the school district stated the reason for the terminations was declining enrollment. At the hearing, the school district sought to amend the notices to justify the terminations because of a reduction in services, as well as declining enrollment. The appellate court held that the statutory notices could not be amended, and terminations could be based only on the reasons stated in the statutory notice so the employee could reasonably assess the probability he or she would not be reemployed. (*Karbach, supra,* 39 Cal.App.3d at pp. 362-363.)

We also have thoroughly reviewed *Brough*, and determined it has no relevance to this case. The only possible application is when *Brough* cites *Karbach* as standing for the proposition that an amendment to the statutory notice after the March 15 deadline is invalid (*Brough, supra,* 118 Cal.App.3d at p. 718), which we agree is the holding in *Karbach*.

Greene's argument confuses two distinct concepts. The first concept is Greene's termination, for which a statutory notice was required. The notice required by section 87740, and which must be sent by March 15, applies to the decision to terminate an employee. The relevant language of the statute states that "No later than March 15 and before an employee is given notice by the governing board that his or her services will not be required for the ensuing year, the governing board and the employee shall be given written notice … that it has been recommended that the notice [not to reemploy] be given to the employee, and stating the reasons therefore." (*Id.*, subd. (a).)

The second concept is Greene's right to transfer, or bump, into another position. This right is found in section 87743, which states in relevant part that "the services of no tenured employee may be terminated under this section while any probationary employee, or any other employee with less seniority, is retained to render a service in a

20.

faculty service area in which the records of the district maintained pursuant to Section 87743.4 reflect that the tenured employee possess the minimum qualifications prescribed by the board of governors and is competent to serve under district competency criteria." This section speaks to the retention of an employee with less seniority in a position than the terminated employee is qualified to assume. The section does not speak to the decision to eliminate a vacant position, nor does it impose a requirement to create a position to avoid a termination.

To interpret these two sections as Greene suggests would result in adding a requirement that no vacant position could be eliminated unless so stated in the statutory notice.

Nothing in *Karbach*, or *Brough* for that matter, compels a different conclusion. In *Karbach* the governing board requested that the notice of termination be amended to add new grounds for terminating the teachers at the administrative hearing, which was well after the March 15 deadline. *Brough* cited *Karbach*, as noted above, while rejecting the teachers' argument that the school district had erred when it retained certain employees who had been given the statutory notice. "The evidence shows that the District did not add other reasons for termination after the deadline." (*Brough, supra,* 118 Cal.App.3d at p. 718.)

As in *Brough*, the District did not add other reasons for Greene's termination. Greene was terminated because his position was eliminated as a result of an elimination of particular kinds of services. That Greene could have transferred into the academic achievement coordinator position, if it had not been eliminated, is unrelated to the reason Greene was terminated. Accordingly, the trial court erred when it concluded the District was required to reemploy Greene in the academic achievement coordinator position.

Greene's grievance, however, may be found in his testimony that *the academic achievement coordinator position was not eliminated*, as the individual who had been in that position continued to perform those same duties after he was transferred to the

21.

English department. Greene, who did not meet the minimum qualifications to teach in the English program, asserts the trial court made such a finding in the statement of decision, but it did not.

Greene testified that he spoke with Gervin, apparently the vice-president of Columbia College. According to Greene, Gervin said the position essentially would remain unchanged, but it would now be staffed by someone from the English department, i.e., someone who met the minimum qualifications to teach in the English department. Gervin told Greene the reason for the change was to prevent a laid off teacher from transferring into the position.

The trial court found the District admitted it eliminated the academic achievement coordinator position after the March 15 statutory notice deadline, and the position was eliminated to prevent a terminated teacher from transferring into the position. This finding was based entirely on hearsay, which would appear to be a violation of Government Code section 11513, subdivision (d).

These findings, however, are not remarkable. The District found itself in a position where it needed to reduce expenses and chose to eliminate positions to do so. Greene's librarian position was eliminated resulting in the termination of his employment with the District. The academic achievement coordinator position was eliminated for the same reason. Because the position was vacant when it was eliminated, however, no statutory notice was required. And because it was eliminated, Greene could not transfer into that position. Greene was not terminated because the academic achievement coordinator position was eliminated -- he simply could not transfer into that position. Thus, as explained above, the trial court erred when it concluded the statutory notice to Greene was insufficient because it did not state one of the reasons Greene was being terminated was because the academic achievement coordinator position was being eliminated.

*Miscellaneous Contentions*

Although we find the issues in the case to be clear, the parties have raised numerous ancillary issues that we will address briefly.

Both parties have cited to Evidence Code section 664, which provides that "It is presumed that official duty has been regularly performed." They each argue its application, or lack thereof, to the issues. We conclude there is no reason to consider this section to resolve the issues in this case.

Teachers have asserted the District is estopped from denying that Kropp and Niazmand did not meet the minimum qualifications for the positions they sought to transfer into because it failed to meet its statutory obligation to maintain proper personnel records. (§ 87743.3.) Since we conclude there was substantial evidence that Kropp met the minimum qualifications to teach electronic technology, this issue is moot as to him. Since we conclude there was no evidence that Niazmand met the minimum qualifications to teach computer graphics, estoppel is not applicable because there was never a record to establish she met the minimum qualifications. Indeed, Niazmand admitted in her testimony she never sought to teach computer graphics until shortly before the administrative hearing.

The District has asserted that numerous documents (exh. MM) submitted by Teachers to the governing board after the administrative law judge had issued his decision were considered improperly by the trial court. Although we have referred to the letter from Niazmand's prior employer, we did so only to establish her inability to meet the minimum qualifications in computer graphics. Accordingly, the District has benefitted from our consideration of the few documents mentioned in this opinion from this exhibit.

## DISPOSITION

The judgment is reversed insofar as it required the issuance of a writ of mandate ordering the reinstatement of Haleh Niazmand and Brian Greene to their tenured

23.

positions and ordering that they be made whole as a result of their layoffs. The remainder of the judgment is affirmed, and the matter is remanded to the trial court for issuance of a new writ of mandate consistent with this opinion. Each party will bear their own costs on appeal.

The order granting the Writ of Supersedeas shall remain in effect only until the Supreme Court grants review of this matter, or this opinion becomes final, whichever occurs first, at which time the order is dissolved.

_____
CORNELL, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
GOMES, J.